STATE OF NORTH CAROLINA v. JERRY WAYNE CONNER

No. 219A91-2

(Filed 10 February 1997)

**1. Criminal Law § 1375 (NCI4th Rev.)— capital sentencing— statutory mitigating circumstances—instructions—value**

The trial court did not err in a capital sentencing proceeding by denying defendant's requested instruction on the value of statutory mitigating circumstances. Defendant's request for an instruction that conveyed to the jury that it must give value to found statutory mitigators was fulfilled by the instruction given.

**Am Jur 2d, Criminal Law §§ 527, 598.**

STATE v. CONNER

[345 N.C. 319 (1997)]

**2. Criminal Law § 1392 (NCI4th Rev.)— capital sentencing— nonstatutory mitigating circumstances—instructions— mitigating value**

There was no plain error in a capital sentencing proceeding in the instructions on mitigating value for nonstatutory mitigating circumstances. The North Carolina Supreme Court has considered and rejected the contention that the trial court must require each juror to use in determinations of Issues Three and Four all of those mitigating circumstances found by one or more jurors in Issue Two, even if the individual juror did not himself or herself find the circumstances to exist.

**Am Jur 2d, Criminal Law §§ 598, 599.**

**3. Criminal Law § 1375 (NCI4th Rev.)— capital sentencing— instructions—mitigating circumstances**

There was no constitutional error in the instructions in a capital sentencing proceeding in the use of the word "may" in the instruction that in deciding Issue Three "each juror may consider any mitigating circumstance or circumstances that the juror determined to exist by a preponderance of the evidence in Issue Two."

**Am Jur 2d, Criminal Law §§ 598, 599.**

**4. Criminal Law § 1375 (NCI4th Rev.)— capital sentencing— mitigating circumstances—jury not required to find**

There was no error in a capital sentencing proceeding where the jury failed to find mitigating circumstances that defendant argues were supported by the evidence. The trial court has neither the duty nor the authority to require jurors to find mitigating circumstances that are supported by evidence, even when that evidence is uncontroverted. The defendant is entitled at most to a peremptory instruction but the jury may nonetheless reject the evidence and not find the fact at issue if it does not believe the evidence.

**Am Jur 2d, Criminal Law §§ 598, 599; Trial §§ 1447, 1760.**

**5. Criminal Law § 1375 (NCI4th Rev.)—capital sentencing— mitigating circumstances—failure of jury to find—not arbitrary**

Failure to find mitigating circumstances does not render a jury's sentencing recommendation arbitrary; defendant's reliance

**STATE v. CONNER**

[345 N.C. 319 (1997)]

on N.C.G.S. § 15A-2000(d)(2) to argue that a sentencer cannot deny the existence of mitigation that all reasonable minds would agree to exist is inapposite.

**Am Jur 2d, Criminal Law §§ 598, 599; Trial §§ 1447, 1760.**

**6. Criminal Law § 1348 (NCI4th Rev.)— capital sentencing—instructions—parole eligibility—offense before 10/1/94—no authority to instruct on life without parole**

The trial court had no authority in a capital sentencing proceeding (and did not err by refusing) to apply the amended N.C.G.S. § 15A-2002 to have the jury consider the possibility of life without parole where defendant was being sentenced for first-degree murders committed before 1 October 1994. Although defendant contended that fundamental fairness requires that an ameliorative law be applied to him, the amendment clearly increased the punishment for first-degree murder by making it a crime for which parole is no longer a possibility and was not ameliorative. The argument that a heavier minimum penalty makes application of the maximum penalty less likely is speculative and unsupported by any evidence in the record. Retroactive application would violate the constitutional prohibition on *ex post facto* application of punitive laws and defendant's offer to waive constitutional protection cannot change the effective date of the statute.

**Am Jur 2d, Criminal Law § 590; Trial § 1443.**

**7. Jury § 141 (NCI4th)— capital sentencing—jury selection—questions concerning parole eligibility**

The trial court did not err in a capital resentencing proceeding by denying defendant's motion to permit *voir dire* of prospective jurors regarding parole eligibility.

**Am Jur 2d, Jury § 202; Trial § 575.**

**Prejudicial effect of statement or instruction of court as to possibility of parole or pardon. 12 ALR3d 832.**

**8. Criminal Law § 1348 (NCI4th Rev.)— capital sentencing—parole eligibility—instructions**

The trial court did not err in a capital sentencing proceeding by refusing to instruct the jury that defendant, if sentenced to life imprisonment, would either spend the rest of his life incarcerated

or be paroled at a date no sooner than twenty years from his first confinement, that the trial judge had the discretion to sentence defendant consecutively, and that the penalty for first-degree rape was life imprisonment with no parole for twenty years.

**Am Jur 2d, Criminal law § 918; Homicide§ 553.**

**Prejudicial effect of statement or instruction of court as to possibility of parole or pardon. 12 ALR3d 832.**

**9. Criminal Law § 1375 (NCI4th Rev.)— capital sentencing— instruction on sympathy—not given—no error**

The trial court did not err in a capital sentencing proceeding by not instructing the jury that it could base its sentencing recommendation in part on sympathy for defendant's plight. To refer to sympathy would have been improper under *State v. Hill*, 331 N.C. 387, in which it was stated that the jury should instead be instructed on that statutory catch-all of "any other circumstance arising from the evidence." The trial court here properly instructed the jury regarding the statutory catchall mitigating circumstance which permits jurors to weigh sympathy in their determinations. Although defendant contends that the State urged the jury to base its recommendation on sympathy for the victims, these arguments were permissible victim-impact arguments.

**Am Jur 2d, Criminal Law § 918; Trial §§ 649, 1457.**

**Sympathy to accused as appropriate factor in jury consideration. 72 ALR3d 842.**

**10. Criminal Law § 461 (NCI4th Rev.)— capital sentencing— prosecutor's argument—death as deterrent**

There was no error in a capital sentencing proceeding where the prosecutor asked what the only guarantee would be that this defendant would not rape and kill again. It is not improper for the prosecutor to recommend death out of concern for the future dangerousness of the defendant.

**Am Jur 2d, Homicide § 464; Trial § 572.**

**Propriety, under Federal Constitution, of evidence or argument concerning deterrent effect of death penalty. 78 ALR Fed. 553.**

11. **Criminal Law § 460 (NCI4th Rev.)— capital sentencing—prosecutor's argument—sympathy**

There was no gross impropriety requiring intervention *ex mero motu* in a capital sentencing proceeding where defendant contended that the prosecutor directly linked important evidentiary facts offered by defendant with sympathy and advised jurors that they should decide these cases by following the law without sympathy. The State did not tell the jury to reject sympathy arising from the evidence; to the contrary, it told the jury to be merciful but to consider where mercy belongs in these cases.

**Am Jur 2d, Criminal Law § 918; Trial §§ 649, 1457.**

**Sympathy to accused as appropriate factor in jury consideration. 72 ALR3d 842.**

12. **Criminal Law § 453 (NCI4th Rev.)— capital sentencing—prosecutor's arguments—victims' last moments**

There was no error requiring intervention *ex mero motu* in a capital sentencing proceeding where defendant contended that the State improperly attempted to elicit sympathy for the victims by arguments that the victims would have no futures and vivid descriptions of what the victims might have done and felt in their last moments. Minor references to the rights of the victims are not so grossly improper as to require *ex mero motu* intervention, a trial court need not intervene *ex mero motu* to prevent the State from rebutting the existence or value of nonstatutory mitigating circumstances and, while the arguments concerning the victims' last moments contained some speculation, they were based largely on defendant's own confessions and the physical evidence that was before the jury and were victim-impact statements that fall within the wide latitude permitted the prosecutor.

**Am Jur 2d, Criminal Law §§ 527, 598, 599; Homicide § 554; Trial § 664.**

13. **Appeal and Error § 421 (NCI4th)— capital sentencing—fact-specific issues—not preservation issues**

Issues in an appeal from a capital sentencing proceeding were fact-specific and thus should not have been treated as preservation issues.

**Am Jur 2d, Appellate Review § 547; Trial §§ 1475, 1999.**

STATE v. CONNER

[345 N.C. 319 (1997)]

Propriety and prejudicial effect of prosecutor's remarks as to victim's age, family circumstances, or the like. 50 ALR3d 8.

14. Criminal Law § 1402 (NCI4th Rev.)— death penalty—not disproportionate

A death penalty was not disproportionate where the record supports the jury's findings on aggravating circumstances, the sentences were not entered under the influence of passion, prejudice, or other arbitrary consideration, and the sentences were not excessive or disproportionate to the penalty imposed in similar cases, considering both the crimes and the defendant. A death penalty has never been found disproportionate in a double murder case; the mere fact that other juries have made different recommendations as to different defendants involved in similar crimes does not render this sentence disproportionate. The two aggravating circumstances found here have been present in other cases in which the death sentence was found disproportionate. It is clear that the present cases are more similar to cases in which the North Carolina Supreme Court found the sentence of death proportionate than to cases in which it was found it disproportionate.

Am Jur 2d, Criminal Law § 628; Homicide § 556.

Sufficiency of evidence, for purposes of death penalty, to establish statutory aggravating circumstance that in committing murder, defendant created risk of death or injury to more than one person, to many persons, and the like—post-Gregg cases. 64 ALR4th 837.

Supreme Court's views on constitutionality of death penalty and procedures under which it is imposed. 51 L. Ed. 2d 886.

Appeal of right pursuant to N.C.G.S. § 7A-27(a) from two judgments imposing sentences of death entered by Parker, J., at the 17 January 1995 Criminal Session of Superior Court, Gates County. Heard in the Supreme Court 16 October 1996.

*Michael F. Easley, Attorney General, by Joan Herre Erwin, Assistant Attorney General, for the State.*

*Jonathan D. Sasser and Martin H. Brinkley for defendant-appellant.*

STATE v. CONNER

[345 N.C. 319 (1997)]

WHICHARD, Justice.

On 13 November 1990, defendant was indicted for two counts of first-degree murder, one count of first-degree rape, and one count of robbery with a dangerous weapon. He was tried capitally at the 15 April 1991 Criminal Session of Superior Court, Gates County. The jury found him guilty of all charges and recommended that he be sentenced to death for the two first-degree murder convictions. The trial court imposed death sentences for the murders, a sentence of life imprisonment for the first-degree rape, and a sentence of forty years' imprisonment for robbery with a firearm. On appeal, this Court found no error in the guilt-innocence phase of defendant's trial, but vacated defendant's death sentences and remanded for a new capital sentencing proceeding. *State v. Conner*, 335 N.C. 618, 440 S.E.2d 826 (1994). Defendant's new capital sentencing proceeding was held at the 17 January 1995 Criminal Session of Superior Court, Gates County. A jury again recommended sentences of death for the first-degree murders, and the trial court sentenced defendant accordingly. Defendant appeals from his sentences. We hold that defendant received a fair sentencing proceeding, free of prejudicial error, and that the sentences of death are not disproportionate.

The facts describing defendant's crimes were presented in our earlier opinion, *id.* at 623-27, 440 S.E.2d at 829-31, and need not be restated in detail here. During defendant's new sentencing proceeding, the State presented evidence that defendant robbed a convenience store; shot and killed the proprietor; and raped, shot, and killed the proprietor's daughter. The State's evidence tended to show that on 18 August 1990 at about 9:30 p.m., defendant spoke with Minh Linda Luong Rogers (Minh Rogers) in the parking lot of the convenience store. Defendant and Minh Rogers talked for a few moments, and then Minh Rogers entered the store. A few moments later, defendant, carrying a shotgun, approached three individuals who were sitting in a car in the store's parking lot. Defendant displayed something that looked like an identification card or badge and told the three people in the car that he was an agent with the Drug Enforcement Administration who was about to execute a drug bust. Defendant informed the individuals that they should leave the premises if they did not want to "get caught up in it." The individuals left the parking lot. Defendant then entered the store, robbed Minh Rogers, told her he was going to shoot her, and did so. Minh Rogers' sixteen-year-old daughter, Linda Minh Rogers (Linda Rogers), emerged from a back room of the store. Defendant raped Linda Rogers at gunpoint and then shot her in the head.

Defendant made two confessions in which he admitted killing both women. In the first confession, he stated that a man he met at a Fast Fare in Murfreesboro offered him $7,000 to kill a "Japanese"[1] woman who ran a store in Gates County. Defendant told the man that he was not interested. Later, however, defendant decided he needed the money and went back to Murfreesboro to find the man. When he was unable to find him, he decided to kill the woman and try to collect the money afterwards. In his second confession, defendant offered to tell "the truth." He stated that he stopped at Rogers' store on 18 August 1990 to get something to drink. An older white male and the woman who owned the store started to tease him, calling him "cowboy" or "cowgirl." Defendant became angry but left the store. Later, he drank two bottles of whiskey and brooded over the teasing he had received. He became angrier and decided to return to the store. Upon his return to the store, he encountered a white man who called him a "dickhead." Defendant invited the man to fight, but the man declined. Defendant stated that he then went into the store and killed the two women.

Defendant offered as mitigating evidence that he had been a reliable driver for a trucking business and that in prison he was a punctual and reliable worker in the Central Prison Hospital X-ray room. Defendant's expert forensic psychiatrist, Dr. Robert Brown, testified that although defendant was competent to stand trial and was not legally insane at the time he committed the crimes, his behavior was affected by mental illness. Dr. Brown testified that defendant suffers from a severe psychosexual disorder, an atypical personality disorder, and an antisocial personality disorder. According to Dr. Brown, defendant's psychosexual disorder causes defendant to desire to have sexual intercourse with women against their will and to fantasize about incestuous sexual relationships. Moreover, Dr. Brown testified, defendant suffers from hallucinations, bizarre ideation, and grandiose thoughts and beliefs. As a result, defendant fantasized about living a dangerous life filled with adventure and sex, and he told Dr. Brown implausible tales about being a "hit man" and being involved in drug shipments and deals involving large sums of money. Dr. Brown concluded that incarceration was the best treatment for defendant's conditions, and he opined that defendant had adjusted well to prison and was not a danger to anyone in that setting. He noted further that prison doctors have prescribed medication to treat defendant's mental disorders. Finally, Dr. Brown tes-

---

1. Minh Rogers was actually a Vietnamese immigrant.

tified that defendant has an IQ of eighty-two, which is significantly below average.

The jury found two aggravating circumstances with respect to defendant's conviction of the first-degree murder of Linda Rogers: that the murder was committed while defendant was engaged in the commission of first-degree rape and that the murder was part of a course of conduct including the commission of other crimes of violence against another person. The jury found two parallel circumstances aggravating defendant's conviction for the first-degree murder of Minh Rogers: that the murder was committed while defendant was engaged in the commission of robbery with a firearm and that the murder was part of a course of conduct including the commission of other crimes of violence against another person. With respect to both murders, the trial court submitted and the jury found the statutory mitigating circumstance that the crime was committed while defendant was under the influence of a mental or emotional disturbance. The jury also found the statutory catchall mitigating circumstance, as well as three of the ten nonstatutory mitigators submitted. The trial court submitted but the jury failed to find two statutory mitigating circumstances: that defendant's capacity to appreciate the criminality of his acts or to conform his conduct to the requirements of the law was impaired and that defendant's age at the time of the crimes was mitigating. The jury then determined that the mitigating circumstances found were insufficient to outweigh the aggravating circumstances found and that the aggravating circumstances when considered with the mitigating circumstances were sufficiently substantial to call for imposition of the death penalty.

[1] Defendant first assigns as error the trial court's denial of defendant's request that the following instruction be given regarding statutory mitigating circumstances:

This mitigating factor is what is known as a "statutory mitigating factor" and thus has mitigating value as a matter of law. If one or more of you finds by a preponderance of the evidence that this statutory mitigating factor exists, then you must give this factor weight when deciding Issues Three and Four.

Defendant argues first that the requested instruction was a correct statement of the law and was supported by the evidence and that defendant was therefore entitled to the instruction. Defendant argues further that the trial court's failure to give the requested instruction

STATE v. CONNER

[345 N.C. 319 (1997)]

allowed the jury the discretionary power to disregard completely statutory mitigating circumstances proved by the evidence.

A trial court must give a requested instruction that is a correct statement of the law and is supported by the evidence. *State v. Moore*, 335 N.C. 567, 606, 440 S.E.2d 797, 819, *cert. denied*, —— U.S. ——, 130 L. Ed. 2d 174 (1994). The trial court need not give the requested instruction verbatim, however; an instruction that gives the substance of the requested instructions is sufficient. *State v. Green*, 336 N.C. 142, 174, 443 S.E.2d 14, 33, *cert. denied*,—— U.S. ——, 130 L. Ed. 2d 547 (1994). Defendant argues further that the instructions given did not adequately address the substance of his requested instruction because they provided no guidance as to the legal distinction between statutory and nonstatutory mitigating circumstances. The gravamen of defendant's contention is that the jury may have failed to recognize that statutory mitigating circumstances have mitigating value as a matter of law. *See State v. Jaynes*, 342 N.C. 249, 285, 464 S.E.2d 448, 470 (1995) ("The General Assembly has determined as a matter of law that statutory mitigating circumstances have mitigating value."), *cert. denied*,—— U.S. ——, 135 L. Ed. 2d 1080 (1996). This Court considered and rejected this argument in *State v. Simpson*, 341 N.C. 316, 348-49, 462 S.E.2d 191, 209-10 (1995), *cert. denied*,—— U.S. ——, 134 L. Ed. 2d 194 (1996).

Here, the trial court described each statutory mitigating circumstance submitted and instructed jurors: "If one or more of you finds by a preponderance of the evidence that the circumstance exists, you would so indicate by having your foreperson write 'yes' in the space provided after this mitigating circumstance on the Issues and Recommendation form." The trial court also instructed the jurors on the meaning of "mitigating circumstance," instructed that they must "weigh the aggravating circumstances against the mitigating circumstances" in Issue Three, and instructed that they must "consider [the aggravating circumstances] in connection with any mitigating circumstances found by one or more of you" in Issue Four. In *Simpson*, we held that virtually identical instructions sufficiently informed the jurors that any statutory mitigating circumstance found by one or more jurors in Issue Two must be given weight in the determination of Issues Three and Four. *Id.* at 348-49, 462 S.E.2d at 209-10. We therefore conclude that, as in *Simpson*, defendant's request for an instruction that conveyed to the jury that it must give value to found statutory mitigators was fulfilled by the instruction given. This assignment of error is overruled.

STATE v. CONNER

[345 N.C. 319 (1997)]

[2] Defendant's next assignment of error has several parts. First, defendant contends that the trial court committed plain error by failing to instruct the jury to consider in Issues Three and Four those nonstatutory mitigating circumstances that have mitigating value. The trial court instructed the jury that in deciding Issue Three, "each juror may consider any mitigating circumstance or circumstances that the juror determined to exist by a preponderance of the evidence in Issue Two." The trial court gave a similar instruction regarding the use of mitigating circumstances in Issue Four. Defendant contends that these instructions were faulty for two reasons: first, because they allowed an individual juror to disregard mitigation found by any fellow juror; second, because they did not require an individual juror to consider any mitigation that he or she personally found to exist. This Court has considered and rejected the contention that the trial court must require each juror to use in the determinations of Issues Three and Four all of those mitigating circumstances found by one or more jurors in Issue Two, even if the individual juror did not himself or herself find the circumstance to exist. *See, e.g., State v. McCarver,* 341 N.C. 364, 402-03, 462 S.E.2d 25, 47 (1995), *cert. denied,*—— U.S. ——, 134 L. Ed. 2d 482 (1996). Defendant offers no compelling reasons for us to revisit this issue; therefore, our prior decisions control.

[3] Defendant's next contention apparently is based upon the trial court's use of the word "may," rather than "must," in the instruction given. The argument that this instruction unconstitutionally fails to require jurors to consider all the mitigating circumstances found has been rejected by this Court in several recent cases. *See, e.g., State v. Carter,* 338 N.C. 569, 604-05, 451 S.E.2d 157, 176 (1994), *cert. denied,*—— U.S. ——, 132 L. Ed. 2d 263 (1995).

[4] Next, defendant asserts that seven of the submitted mitigating circumstances that the jury failed to find were supported by the evidence. He argues that the jury's failure to find the circumstances resulted in an unreliable sentencing recommendation, in violation of defendant's Eighth Amendment right to freedom from cruel and unusual punishment. Defendant does not identify a specific erroneous action of the trial court that led to this outcome; nevertheless, he appears to believe that the trial court could and should have required the jury to find the circumstances. We know of no authority for this proposition. To the contrary, our death penalty statute places the responsibility of determining whether mitigating circumstances exist squarely on the jury. N.C.G.S. § 15A-2000(b) (Supp. 1996).

STATE v. CONNER

[345 N.C. 319 (1997)]

Defendant recites at length the evidence that he contends supports the mitigating circumstances at issue and argues that the evidence was not contradicted and the witnesses were not effectively impeached. Even assuming these assertions are true, defendant cannot prevail on this assignment of error. The trial court has neither the duty nor the authority to require jurors to find mitigating circumstances that are supported by evidence, even when that evidence is uncontroverted. "In those cases where the evidence is truly uncontradicted, the defendant is, at most, entitled to a peremptory instruction when he requests it." *State v. Alston*, 341 N.C. 198, 256, 461 S.E.2d 687, 719 (1995), *cert. denied,*— U.S. —, 134 L. Ed. 2d 100 (1996). Moreover, "even where all of the evidence supports a finding that the mitigating circumstance exists and a peremptory instruction is given, the jury may nonetheless reject the evidence and not find the fact at issue if it does not believe the evidence." *Id.* at 256, 461 S.E.2d at 719-20. Thus, the jurors were entitled to reject the evidence defendant offered in mitigation, and the trial court did not err by permitting them to do so.

[5] Finally, defendant argues that a sentencer cannot deny the existence of mitigation that all reasonable minds would agree to exist. The only North Carolina authority that defendant cites for this proposition is N.C.G.S. § 15A-2000(d)(2), which describes this Court's duty to scrutinize death sentences carefully and to vacate sentences "imposed under the influence of passion, prejudice, or any other arbitrary factor." Defendant's citation of this statute is inapposite. Failure to find mitigating circumstances does not render the jury's sentencing recommendation arbitrary. This Court's statutory duty to determine the propriety of a death sentence is described and performed later in this opinion. This assignment of error is overruled.

In his next assignment of error, defendant makes three arguments. First, he argues that the trial court denied him due process of law and equal protection of the law when it refused to allow jurors to consider the option of sentencing defendant to life without possibility of parole. Second, he contends that the trial court erred in denying his motion to permit *voir dire* of prospective jurors regarding their views about parole eligibility. Third, he argues that the trial court's refusal to give an instruction regarding parole eligibility was reversible error. We conclude that each of these arguments is without merit.

[6] Defendant argues first that he was entitled to have the jury consider the possibility of sentencing him to life imprisonment without

possibility of parole, even though the statute in effect at the time defendant committed the crimes did not permit such a sentence. At the time defendant committed the murders of Minh and Linda Rogers, persons sentenced to life imprisonment for first-degree murder were to become eligible for parole after twenty years. N.C.G.S. § 15A-1371(a1) (1988). In 1994, the legislature repealed this statute and amended N.C.G.S. § 15A-2002 to provide that a defendant sentenced to life imprisonment for a first-degree murder committed on or after 1 October 1994 shall not be eligible for parole. N.C.G.S. § 15A-2002 requires the judge to instruct the jury that a sentence of life imprisonment "means a sentence of life without parole." Defendants sentenced to life imprisonment for offenses committed before 1 October 1994 continue to be sentenced under the former statute and are therefore eligible for parole.

Defendant argues that the trial court's failure to apply to him the law providing for a sentence of life without parole violated his constitutional rights to due process, to equal protection of the laws, and to a fair and reliable sentencing hearing. Defendant contends that fundamental fairness requires that an ameliorative law be applied to him. He argues that the amendment to N.C.G.S. § 15A-2002 is ameliorative, even though it makes a sentence of life imprisonment more onerous, because it diminishes the chance that the jury will return a recommendation of death. Defendant's argument is without merit. The amendment was not an ameliorative act; it clearly increased the punishment for first-degree murder by making it a crime for which parole is no longer a possibility. Defendant's argument that a heavier minimum penalty makes application of the maximum penalty less likely is speculative and unsupported by any evidence in the record. By its plain terms, the amendment increases, rather than decreases, a penalty. Therefore, retroactive application of the amendment would violate the constitutional prohibition on *ex post facto* application of punitive laws. *See State v. Wright*, 302 N.C. 122, 128, 273 S.E.2d 699, 704 (1981) ("Any legislation which increases the punishment for a crime between the time the offense was committed and the time a defendant is punished therefor is considered an invalid *ex post facto* law as applied to that defendant.").

Defendant acknowledges the *ex post facto* problem and argues further that the trial court should have accepted his offer to waive this constitutional protection. His waiver of a constitutional right cannot change the effective date of a valid statute, however. The amended statute by its terms applies only to first-degree murders

committed on or after 1 October 1994. The trial court therefore had no authority to apply the statute to defendant's cases and did not err in refusing to do so.

[7] Defendant argues next that the trial court erred in denying his motion to permit *voir dire* of prospective jurors regarding their perceptions about the parole eligibility of defendants sentenced to life imprisonment. This Court has held repeatedly that a defendant is not entitled to explore on *voir dire* prospective jurors' perceptions of parole eligibility. *State v. Chandler*, 342 N.C. 742, 749-50, 467 S.E.2d 636, 640, *cert. denied*,—— U.S. ——, 136 L. Ed. 2d 133 (1996). We adhere to our prior decisions and hold that the trial court did not err in refusing defendant's request to question jurors about parole.

[8] Defendant concludes this assignment of error by contending that the trial court erred in refusing to instruct the jury that, if sentenced to life imprisonment, defendant would either spend the rest of his life incarcerated or be paroled at a date no sooner than twenty years from his first confinement. The proposed instruction also would have stated that the trial court had the discretion to sentence defendant consecutively for crimes of which he had been convicted and that the penalty for first-degree rape was life imprisonment with no parole for twenty years. Defendant contends that the trial court's failure to give these instructions violated his constitutional rights to due process of law and freedom from cruel and unusual punishment. This Court has considered and rejected similar arguments in numerous decisions. *See, e.g., Simpson*, 341 N.C. at 353-54, 462 S.E.2d at 215. This assignment of error is overruled.

[9] In his next assignment of error, defendant contends that the trial court erred by declining to instruct the jury that it could base its sentencing recommendations, in part, on sympathy for defendant's plight. In *State v. Hill*, 331 N.C. 387, 421, 417 S.E.2d 765, 782-83 (1992), *cert. denied*, 507 U.S. 924, 122 L. Ed. 2d 684 (1993), we stated:

> We believe that trial courts should not refer to "sympathy." Instead, when instructing the jury to consider the statutory catch-all circumstance of "*[a]ny other circumstance arising from the evidence* which the jury deems to have mitigating value," trial courts should emphasize that the jury must weigh all mitigating considerations whatsoever which it finds supported by evidence. N.C.G.S. § 15A-2000(f)(9) (1988) (emphasis added). We believe that this course will lead the jury to consider all of the mitigating evidence introduced as required by *Lockett v. Ohio*, 438 U.S. 586,

57 L. Ed. 2d 973 (1978), without the risk of encouraging the jury to exercise unbridled, and thus unconstitutional, discretion.

Therefore, the trial court did not err in refusing to give defendant's requested instruction; to the contrary, it would have been improper for the court to refer to sympathy.

Defendant attempts to distinguish *Hill* by contending that we did not decide in that case whether the sentiment of sympathy may nevertheless properly affect the weighing of aggravating and mitigating circumstances. Defendant contends that unless instructed as he requested, jurors would consider themselves to be restricted from applying human sentiment to the sentencing determination. We find no merit in this argument. The record shows that the trial court properly instructed the jury regarding the statutory catchall mitigating circumstance. Notwithstanding this Court's conclusion in *Hill* that the trial court should not specifically refer to sympathy, the catchall mitigating circumstance permits jurors to weigh sympathy in their determinations, if they in fact have sympathy for the defendant and consider that sympathy to be a circumstance having mitigating value. *See* N.C.G.S. § 15A-2000(f)(9).

Finally, defendant attempts to bolster his argument by contending that the State urged the jury to base its sentencing recommendations on the nonstatutory aggravating circumstance of sympathy for the victims. We have reviewed the arguments defendant recites, and we conclude that they were permissible victim-impact arguments that did not inappropriately deprive defendant of full consideration under the law of his mitigating evidence. This assignment of error is overruled.

**[10]** In his next assignment of error, defendant complains of several of the prosecution's arguments that he contends were improper. In the first argument defendant challenges, the prosecutor asked, "What is our only guarantee that this defendant will not rape again? What is our only guarantee that he will not kill again?" Defendant's objection was overruled. Defendant contends that this specific-deterrence argument was improper and should not have been permitted. This Court has overruled similar assignments of error in many cases, concluding that it is not improper for a prosecutor to urge the jury to recommend death out of concern for the future dangerousness of the defendant. *See, e.g., State v. Abraham*, 338 N.C. 315, 339, 451 S.E.2d 131, 143 (1994). The trial court therefore did not err in allowing the argument.

**[11]** Defendant next argues that several arguments to which he did not object at trial were grossly improper, requiring *ex mero motu* intervention by the trial court. This Court has held repeatedly that remarks that pass without objection by defense counsel at trial "must be gross indeed for this Court to hold that the trial court abused its discretion in not recognizing and correcting *ex mero motu* the comments regarded by defendant as offensive only on appeal." *State v. Brown*, 327 N.C. 1, 19, 394 S.E.2d 434, 445 (1990). Further, in carrying out their duty to advocate zealously that the facts in evidence warrant imposition of the death penalty, prosecutors are permitted wide latitude in their arguments. *State v. Geddie*, 345 N.C. 73, 97, 478 S.E.2d 146, 158 (1996). Having examined the arguments in light of these principles, we conclude that they were not so grossly improper as to violate defendant's rights and that the trial court therefore did not err in failing to intervene *ex mero motu*. We now consider each argument in turn.

In his comments upon defendant's submitted mitigating circumstances, the prosecutor made the following statements:

It may be suggested to you, well, be merciful, be merciful not because of any merit the defendant may present to you but because of the sort of people you are. Be merciful. Let mercy flow. Where does mercy belong? Where does mercy belong in these cases? The Ancient Greek Philosopher, Aristotle, once said, "Pity may be defined as a feeling of pain caused by the sight of some evil, destructive or painful event which benefits someone who does not deserve it." Who does not deserve it? Who did not deserve to die?

Did Minh Linda Luong Rogers deserve to die? Did Linda Minh Rogers deserve to die?

. . . .

The defendant did what he wanted to do with the knowledge that these things were wrong, but now calls upon you not to do what I submit, you need to do, in the name of mercy.

Defendant contends that by this argument the State directly linked important evidentiary facts offered by defendant in mitigation with sympathy, and it advised jurors that they should decide these cases by following the law without sympathy. We disagree with this characterization of the State's argument. The State did not tell the jury to reject sympathy arising from the evidence; to the contrary, it told

the jury to be merciful but to consider where mercy belongs in these cases. Such an argument is within the scope of permissible arguments.

**[12]** Defendant next contends that the State improperly attempted to elicit sympathy for the victims. Defendant points to several arguments in which the State referred to the fact that the victims would have no futures and vividly described what the victims might have done and felt in the last moments of their lives.

In *Payne v. Tennessee*, 501 U.S. 808, 827, 115 L. Ed. 2d 720, 736 (1991), the United States Supreme Court held that the Eighth Amendment does not prohibit a capital sentencing jury from considering, or a prosecutor from arguing, victim-impact evidence. Defendant acknowledges the authority of *Payne,* but contends that the State's arguments exceeded the bounds of *Payne.* Defendant complains particularly about the following statements:

> One of [defendant's] rights was the right to remain silent. The defendant, so far as we know, did not inform either this mother or her child of their rights to remain silent because the fact is, the immutable fact and no matter how we sift through it, the fact that will not go away is they are silent forever.
>
> . . . .
>
> The defendant has adjusted well to incarceration. Did Linda get a chance to adjust well to being raped? Did she get a chance to adjust well to being killed?

Defendant contends that these arguments ridiculed his mitigating evidence and rendered the sentencing proceeding fundamentally unfair. We disagree. With respect to the first statement quoted, this Court has held that minor references to the rights of the victims are not so grossly improper as to require the *ex mero motu* intervention of the trial court. *State v. Sexton,* 336 N.C. 321, 371-72, 444 S.E.2d 879, 908, *cert. denied,*—— U.S. ——, 130 L. Ed. 2d 429 (1994). With respect to the second statement quoted, this Court has held that a trial court need not intervene *ex mero motu* to prevent the State from rebutting the existence or value of nonstatutory mitigating circumstances; indeed, it has held that such arguments are not improper. *See, e.g., Green,* 336 N.C. at 189, 443 S.E.2d at 41.

Defendant argues further that this Court should not permit "purely speculative victim-impact evidence." We assume defendant is referring to those portions of the prosecutor's argument in which he

described the victims' last moments. The arguments complained of were based largely on defendant's own confessions and the physical evidence that was before the jury; however, they did include some speculation by the prosecutor as to what the victims thought and felt. We hold that these statements were victim-impact arguments that fall within the wide latitude permitted the prosecutor and that *ex mero motu* intervention by the trial court was not warranted. This assignment of error is overruled.

**[13]** Defendant next raises several assignments of error he labels "other issues." Defendant states that the issues "do not necessitate extensive briefing," as they are raised here "with the request that this Court grant relief on them and, if the Court declines to do so, in order to preserve them in the event of subsequent review." Defendant includes in this category the following issues: (1) the trial court's denial of defendant's motion to suppress statements attributed to defendant, (2) the trial court's denial of defendant's motion to suppress incriminating evidence uncovered by a search, and (3) the trial court's failure to impose a life sentence on the ground that the State's evidence was insufficient to support the N.C.G.S. § 15A-2000(e)(5) and (e)(11) aggravating circumstances. We disagree with defendant's conclusion that these issues "do not necessitate extensive briefing"; the issues are fact-specific and thus should not be treated as preservation issues. As we stated in *State v. Gregory*, 340 N.C. 365, 429, 459 S.E.2d 638, 675 (1995), *cert. denied*,— U.S. —, 134 L. Ed. 2d 478 (1996):

> [T]hese issues are not proper preservation issues because they are not determined solely by principles of law upon which this Court has previously ruled. Rather, these assignments of error are fact specific requiring review of the transcript and record to determine if the assignment has merit. Where counsel determines that an issue of this nature does not have merit, counsel should "omit it entirely from his or her argument on appeal." *State v. Barton*, 335 N.C. 696, 712, 441 S.E.2d 295, 303 (1994).

Defendant's arguments on these assignments of error are cursory and do not explain the relevant facts. Nevertheless, we have examined the record and transcript pertinent to these issues. We conclude that defendant has failed to carry his burden of showing error on the record. These assignments of error are therefore overruled.

Defendant raises ten additional issues which may properly be denominated preservation issues and which he concedes this Court

has decided against his position: (1) whether the trial court committed plain error by asking questions designed to death-qualify the jurors; (2) whether the trial court erred in denying defendant's pretrial motion for additional peremptory challenges; (3) whether the death penalty is unconstitutional; (4) whether the trial court erred in denying defendant's motion to prohibit death-qualification *voir dire* questions and to limit disqualification for jurors' particular views on punishment; (5) whether characterizing the jury's decision as a "recommendation" denies defendant's constitutional rights to due process of law and freedom from cruel and unusual punishment; (6) whether allowing jurors to determine whether a circumstance has mitigating value denies defendant his constitutional rights to due process of law and freedom from cruel and unusual punishment; (7) whether the submission of the N.C.G.S. § 15A-2000(e)(5) and (e)(11) aggravating circumstances is duplicative and constitutes "double counting" in violation of the Double Jeopardy Clause; (8) whether the trial court's use of the term "may" in instructing the jury with respect to Issues Three and Four makes consideration of proven mitigating circumstances discretionary, in violation of defendant's constitutional rights; (9) whether the trial court plainly erred by using instructions previously approved by this Court regarding defendant's burden of proof on mitigating circumstances; and (10) whether the trial court plainly erred by instructing the jury that it must unanimously agree on its answers to Issues Three and Four. Defendant has presented no compelling reason to reconsider our positions on these issues. Accordingly, these assignments of error are overruled.

[14] We turn now to our statutory duty to ascertain: (1) whether the record supports the jury's findings of the aggravating circumstances on which the sentences of death were based; (2) whether the death sentences were entered under the influence of passion, prejudice, or other arbitrary consideration; and (3) whether the death sentences are excessive or disproportionate to the penalty imposed in similar cases, considering both the crimes and the defendant. N.C.G.S. § 15A-2000(d)(2).

In each of these two murder cases, the jury found two aggravating circumstances. In the case of the murder of Minh Rogers, the jury found that the murder was committed while defendant was engaged in robbery, N.C.G.S. § 15A-2000(e)(5), and that the murder was part of a course of conduct involving other violent crimes, N.C.G.S. § 15A-2000(e)(11). In the case of Linda Rogers, the jury found that the murder was committed while defendant was en-

gaged in rape, N.C.G.S. § 15A-2000(e)(5), and that the murder was part of a course of conduct involving other violent crimes, N.C.G.S. § 15A-2000(e)(11). The record fully supports the finding of these aggravating circumstances. Further, we find no indication that the sentences of death were imposed under the influence of passion, prejudice, or any other arbitrary consideration.

In conducting our final statutory duty of proportionality review, it is proper to compare the present cases to cases in which this Court has concluded that the death penalty was disproportionate. *State v. Heatwole*, 344 N.C. 1, 29, 473 S.E.2d 310, 325 (1996). We have found the death penalty disproportionate in seven cases. *State v. Benson*, 323 N.C. 318, 372 S.E.2d 517 (1988); *State v. Stokes*, 319 N.C. 1, 352 S.E.2d 653 (1987); *State v. Rogers*, 316 N.C. 203, 341 S.E.2d 713 (1986), *overruled on other grounds by State v. Vandiver*, 321 N.C. 570, 364 S.E.2d 373 (1988); *State v. Young*, 312 N.C. 669, 325 S.E.2d 181 (1985); *State v. Hill*, 311 N.C. 465, 319 S.E.2d 163 (1984); *State v. Bondurant*, 309 N.C. 674, 309 S.E.2d 170 (1983); *State v. Jackson*, 309 N.C. 26, 305 S.E.2d 703 (1983).

These cases are distinguishable from those cases. First, defendant here was convicted of two murders. This Court has never found a death sentence disproportionate in a double-murder case. *Heatwole*, 344 N.C. at 30, 473 S.E.2d at 325. Defendant nevertheless contends that the death sentences are disproportionate here and cites a number of double-murder cases in which juries have recommended sentences of life imprisonment. The mere fact that other juries have made different recommendations as to different defendants involved in similar crimes does not render this defendant's death sentences disproportionate, however. As we stated in *State v. Keel*, 337 N.C. 469, 502, 447 S.E.2d 748, 767 (1994), *cert. denied,*— U.S. —, 131 L. Ed. 2d 147 (1995): "[T]he fact that in one or more cases factually similar to the one under review a jury or juries have recommended life imprisonment is not determinative, standing alone, on the issue of whether the death penalty is disproportionate in the case under review."

Second, the two aggravating circumstances found in these cases have been present in other cases in which this Court has found the sentence of death proportionate. *See, e.g., State v. Thomas*, 344 N.C. 639, 655, 477 S.E.2d 450, 460 (1996) (death sentence proportionate when murder committed while defendant engaged in the commission of a sexual offense); *Heatwole*, 344 N.C. at 30, 473 S.E.2d at 325

**STATE v. CONNER**

[345 N.C. 319 (1997)] .

(death sentences proportionate in double murder in which course of conduct aggravator was found); *State v. Rowsey*, 343 N.C. 603, 630, 472 S.E.2d 903, 919 (1996) (death sentence proportionate when murder committed while defendant engaged in robbery with a firearm). Moreover, it is clear that the present cases are more similar to cases in which we have found the sentence of death proportionate than to cases in which we have found it disproportionate.

We conclude that the death sentences were not excessive or disproportionate. We hold that defendant received a fair capital sentencing proceeding, free of prejudicial error.

NO ERROR.