STATE OF NORTH CAROLINA v. DAVID KENT WILLIAMS

No. 389A96

(Filed 5 February 1999)

**1. Appeal and Error— assignments of error—multiple issues—argumentation**

Assignments of error violated Appellate Procedure Rule 10(c)(1) and are subject to dismissal where they raised multiple issues of law and include argumentation. N.C. R. App. P. 10(c)(1).

**2. Appeal and Error— brief—questions presented—reference to assignments of error**

Defendant violated the rule that a reference to the assignments of error pertinent to each question be referred to immediately following such question where defendant set forth several arguments in his brief with a cluster of assignments referred to after each such argument, but each of those arguments includes many subheadings in which separate questions are stated without reference to any assignment of error.

**3. Sentencing— capital sentencing—mitigating circumstance— no significant criminal history—State's rebuttal evidence— findings not required**

While the trial court was obligated to determine that a rational juror could find that defendant had no significant history

1

of criminal activity before submitting the (f)(1) mitigating cir-
cumstance to the jury, there is no requirement that the determi-
nation be made prior to the admission of the State's evidence
rebutting defendant's evidence supporting this mitigator.
Furthermore, the trial court was not required to make findings of
fact to explain its decision to submit the (f)(1) mitigating cir-
cumstance. N.C.G.S. § 15A-2000(f)(1).

## 4. Sentencing— capital sentencing—mitigating circumstance—history of criminal activity—evidence of extent and significance

Once any evidence is introduced in a capital sentencing pro-
ceeding tending to show a history of prior criminal activity by
defendant, defendant and the State are free to present all evi-
dence available concerning the extent and significance of that
history. Accordingly, where defendant testified that he had been
convicted of misdemeanors for several assaults on his wife and
his girlfriends, communicating threats, trespassing, possession of
stolen property, and traffic offenses, and that he had a history of
buying, possessing and selling drugs, the State was properly
allowed to question defendant on cross-examination about the
details of his criminal history and to question several witnesses,
including his ex-wife and former and current girlfriends, about
defendant's assaults and other criminal activity.

## 5. Sentencing— capital sentencing—history of criminal activity—cross-examination of defendant

In a capital sentencing proceeding wherein the no signifi-
cant history of criminal activity mitigating circumstance was at
issue, the State's cross-examination of defendant regarding the
details of his criminal history was not limited to the name of each
crime, the time and place of conviction, and the punishment
imposed.

## 6. Sentencing— capital sentencing—mitigating circumstance—no significant criminal history—submission over defendant's objection

The trial court did not err by submitting the no significant
history of prior criminal activity mitigating circumstance to the
jury over defendant's objection where evidence tended to show
that defendant had been convicted of numerous misdemeanor
assaults on females and various other offenses, including com-

municating threats, trespass, possession of·stolen property, and traffic offenses, and that the most serious of defendant's prior convictions were for assaults on his wife and girlfriends. A rational juror could find defendant's history of prior criminal activity, which consisted mostly of misdemeanors, to be insignificant with regard to the jury's capital sentencing recommendation.

**7. Criminal Law— capital sentencing—prosecutor's closing argument—mitigating circumstances—request by defendant—(f)(1) circumstance submitted over objection**

Defendant was not prejudiced by the prosecutor's closing argument in a capital sentencing proceeding that the mitigating circumstances had been requested by defendant when defendant had objected to submission of the (f)(1) mitigating circumstance of no significant history of criminal activity where that argument was not directed specifically toward the (f)(1) mitigator but to the mitigating circumstances in their totality; the prosecutor expressly told the jury that the (f)(1) mitigator was a statutory mitigating circumstance and was not submitted by counsel for defendant; and the trial court instructed the jury that defendant did not request the (f)(1) mitigating circumstance and that this circumstance must be submitted as a matter of law.

**8. Constitutional Law— capital sentencing—mitigating circumstance—no significant criminal history—submission over defendant's objection—effective assistance of counsel**

The trial court did not violate defendant's Sixth Amendment right to the effective assistance of counsel by submitting the (f)(1) no significant history of criminal activity mitigating circumstance to the jury over defendant's objection.

**9. Discovery— intent to call psychiatrist—discovery of report—psychiatrist not called**

Where counsel for defendant had indicated that they intended to call a psychiatrist to testify at defendant's capital sentencing proceeding at the time the trial court ordered defendant to provide a copy of the psychiatrist's report to the State, the State had a right to discover the report under N.C.G.S. § 15A-905(b) even though defense counsel ultimately decided not to call the psychiatrist to testify or to introduce his report into evidence.

**10. Constitutional Law— effective assistance of counsel—failure to object—State's entitlement to report**

Defense counsel's failure to object to the prosecutor's alleged misrepresentation of a pretrial order relating to a psychiatrist's report at the time the trial court ordered disclosure of the report to the State did not constitute ineffective assistance of counsel where the State was entitled to discover this report.

**11. Evidence— competency evaluation—communications not privileged—access to complete Dix Hospital file—interviews with psychiatrist**

Where the record shows that the objective of defendant's commitment to Dix Hospital was a competency evaluation and, although the court order committing defendant to Dix Hospital mentioned that defendant had expressed "suicidal thoughts," there was no indication in the record that a psychiatrist at Dix Hospital and his case analyst examined or communicated with defendant for any purpose other than determining defendant's competency, defendant's communications with the psychiatrist and his case analyst were not protected by physician-patient, psychologist-client, or attorney work product privileges, and the trial court did not err by granting the State access to defendant's complete Dix Hospital file and by allowing the prosecutor to conduct unrestricted interviews with the psychiatrist and his case analyst. Assuming arguendo that defendant's communications with the psychiatrist and his case analyst were privileged, the trial court had the discretion to compel disclosure of such communications as necessary to the proper administration of justice, and such a finding was implicit in the court's disclosure order.

**12. Discovery— competency evaluation—improper discovery of complete file—altercation by defendant at Dix Hospital—use for rebuttal—proper administration of justice**

Assuming arguendo that the prosecutor had no right to discover a copy of defendant's complete Dix Hospital file and learned of a verbal altercation defendant had with an attendant in the cafeteria at Dix Hospital by reading that file, the trial court properly allowed a health care technician at Dix Hospital to testify about his observation of the altercation to rebut testimony by a jail minister that defendant always treated her with respect and honor and to insure the proper administration of justice.

STATE v. WILLIAMS

[350 N.C. 1 (1999)]

13. **Criminal Law— capital sentencing—prosecutor's argument—future dangerousness**

The prosecutor's use of a verbal altercation by defendant with an attendant at Dix Hospital shortly before his return to Central Prison as an example in arguing in this capital sentencing proceeding that defendant treats people with respect only when he needs something from them was a proper argument about the future dangerousness of defendant.

14. **Criminal Law— capital sentencing—objections sustained—failure to give curative instructions**

The trial court did not commit prejudicial error in a capital sentencing proceeding by failing to give curative instructions after sustaining defendant's objections to improper questions about defendant's conduct in jail and improper argumentative questions where defendant did not request curative instructions and failed to show that the mere asking of the questions prejudiced him.

15. **Criminal Law— capital sentencing—prosecutor's closing argument—disregard of plea for mercy**

The prosecutor's closing argument in a capital sentencing proceeding to the effect that the facts and the law justified the death penalty and that defendant's plea for mercy should be disregarded was not improper.

16. **Criminal Law— capital sentencing—prosecutor's closing argument—Biblical references—no gross impropriety**

It is not so grossly improper for a prosecutor to argue in a capital sentencing proceeding that the Bible does not prohibit the death penalty as to require intervention ex mero motu by the trial court, but such arguments are discouraged. All counsel should base their jury arguments solely upon the secular law and the facts.

17. **Criminal Law— capital sentencing—prosecutor's closing argument—inability to adapt to prison life—future dangerousness**

When read in context, the prosecutor's argument in a capital sentencing proceeding focused on defendant's inability to adapt to prison life if given a life sentence and did not improperly allude to the possibility of parole where the prosecutor never used the word "parole" and never mentioned the possibility that

a life sentence would mean that defendant would eventually be released. Furthermore, it was not improper for the prosecutor to urge the jury to recommend death out of concern for the future dangerousness of defendant.

**18. Criminal Law— capital sentencing—prosecutor's closing argument—injection of personal beliefs—absence of prejudice**

Although no evidence in the record supported the prosecutor's characterization of the effects of crack cocaine in his closing argument in a capital sentencing proceeding, defendant is not entitled to a new capital sentencing proceeding because this very brief argument did not so infect the trial with unfairness as to deny defendant due process of law, and the trial court's instructions on the duty of jurors to rely on their own recollection of the evidence and that they should disregard personal opinions stated in the arguments cured any prejudice from the prosecutor's improper injection of personal beliefs into his argument.

**19. Jury— capital punishment views—excusal for cause without rehabilitation**

The trial court did not err in allowing the State's motions to excuse prospective jurors for cause based on their opposition to capital punishment without giving defendant the opportunity to rehabilitate them where all of these prospective jurors stated with unmistakable clarity that their personal or religious beliefs would prevent them from voting to recommend the death penalty under any circumstances, and the trial court asked final questions to clarify each juror's inability to recommend the death penalty before dismissing such juror.

**20. Sentencing— capital sentencing—mitigating circumstance—inability to appreciate criminality—peremptory instruction—controverted evidence**

The trial court did not err by denying defendant's request for peremptory instructions in a capital sentencing proceeding on the statutory mitigating circumstance concerning his inability to appreciate the criminality of his conduct or to conform his conduct to the law where defendant contended that uncontroverted evidence at trial tended to show that defendant was on an uncontrollable crack binge on the night of the crime and could not possibly have conformed his behavior, but defendant's own testimony at trial indicated that he understood the wrongfulness of his conduct at the time of the killing. N.C.G.S. § 15A-2000(f)(6).

**21. Sentencing— capital sentencing—mitigating circumstance—definition—instructions**

The trial court's instructions defining the concept of a "mitigating circumstance" did not preclude the jury from considering any aspect of defendant's character or background or any of the circumstances of the killing that defendant may have presented as a basis for a sentence less than death; rather, the instructions were virtually identical to instructions approved by the N. C. Supreme Court in previous decisions.

**22. Evidence— capital sentencing—crime scene, autopsy and other photographs**

The trial court did not err in a capital sentencing proceeding by its admission of photographs of the murder victim's house and neighborhood to illustrate the testimony of the victim's neighbor and her nephew regarding what they saw on the night of the crime; a photograph of the victim on the night of the killing to illustrate testimony of the victim's nephew and brother-in-law about the injuries they observed following the killing; and five photographs of the victim taken by the forensic pathologist to illustrate his testimony about the injuries to the victim's head and vaginal area that he observed during his autopsy. Furthermore, photographs of the victim on the day after the killing were relevant to the issue of whether the murder was heinous, atrocious or cruel.

**23. Evidence— capital sentencing—crime scene photograph—crucifix—photograph of victim when alive**

The fact that a crime scene photograph depicted a crucifix over the murder victim's bed did not so infect the capital sentencing proceeding with unfairness as to violate defendant's due process rights. Furthermore, it was not error for the trial court to admit a photograph of the victim as she appeared when alive.

**24. Sentencing— capital sentencing—death penalty statute—constitutionality**

The North Carolina Death Penalty Statute, N.C.G.S. § 15A-2000, is constitutional.

**25. Sentencing— capital sentencing—death penalty not disproportionate**

A sentence of death imposed upon defendant for first-degree murder was not excessive or disproportionate where defendant pled guilty to first-degree murder under the theory of premedita-

STATE v. WILLIAMS

[350 N.C. 1 (1999)]

tion and deliberation as well as the felony murder rule; the evidence tended to show that defendant brutally assaulted the victim in her own bedroom in the early morning hours; the twenty-nine-year-old defendant repeatedly and brutally beat and raped the eighty-three-old victim during an attempt to steal money to enable him to buy more crack cocaine; and the jury found as aggravating circumstances (1) that the murder was committed by defendant while he was engaged in committing first-degree burglary, (2) that the murder was committed by defendant while he was engaged in committing first-degree rape, and (3) that the murder was part of a course of conduct in which defendant engaged and which included the commission by defendant of other crimes of violence against another person or persons.

Justices MARTIN and WAINWRIGHT did not participate in the consideration or decision of this case.

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of death entered by Manning, J., on 23 July 1996 in Superior Court, Bertie County, upon defendant's plea of guilty to first-degree murder. Defendant's motion to bypass the Court of Appeals as to his appeal of additional judgments was allowed by the Supreme Court on 13 October 1997. Heard in the Supreme Court on 28 May 1998.

*Michael F. Easley, Attorney General, by Thomas J. Ziko, Special Deputy Attorney General, for the State.*

*Marilyn G. Ozer and William F.W. Massengale for defendant-appellant.*

MITCHELL, Chief Justice.

On 20 December 1995, defendant David Kent Williams was indicted for first-degree murder, first-degree rape, two counts of first-degree burglary, misdemeanor assault on a female, and assault with a deadly weapon inflicting serious injury. Defendant was tried capitally at the 24 June 1996 Criminal Session of Superior Court, Bertie County. Prior to the commencement of trial, defendant pled guilty to first-degree murder under the theory of premeditated and deliberate murder and the felony murder rule. Defendant also pled guilty to all of the other charges against him.

After a separate capital sentencing proceeding, the jury recommended a sentence of death for the first-degree murder of Etta

Plunkett, and the trial court sentenced defendant accordingly. In addition, the trial court imposed consecutive sentences of imprisonment for defendant's other convictions.

The State's evidence tended to show *inter alia* that around 4:30 a.m. on 28 October 1995, defendant broke into the Lewiston, North Carolina, home of Stella Whitney and went into the living room where Ms. Whitney; her grandson; and her sixteen-year-old daughter, Jereline, were sleeping. Defendant assaulted Jereline and Ms. Whitney and then fled after the Whitneys managed to escape to their landlord's home for help.

After fleeing the Whitney home, defendant broke into the home of Etta Plunkett, a neighbor of Ms. Whitney's. Defendant brutally beat Ms. Plunkett, an eighty-three-year-old woman, in the course of robbing and raping her. When police and family members entered Ms. Plunkett's home around 5:25 a.m., they found her in her bedroom, unconscious and struggling to breathe. Ms. Plunkett died four days later, without regaining consciousness, due to extensive blunt force injuries to her head which resulted in a large blood clot compressing her brain.

An autopsy revealed that Ms. Plunkett's face, neck, and chest had been severely beaten. She had suffered at least six severe blows to the head and four broken ribs. In addition, there were tears or cuts both to the vulva as well as deep within her vagina.

Defendant was arrested on the morning of 28 October 1995 and admitted breaking into the Whitney and Plunkett homes. Defendant said that he had consumed a lot of crack cocaine and alcohol during the preceding night and that while he remembered breaking into the Whitney and Plunkett homes, he did not remember the assaults which followed.

[1],[2] In reviewing this case on appeal, we note at the outset that many of defendant's assignments of error raise multiple issues of law and include argumentation. These assignments of error are subject to dismissal, as they violate the mandate of Rule 10(c)(1) of the North Carolina Rules of Appellate Procedure that "[e]ach assignment of error shall, so far as practicable, be confined to a single issue of law; and shall state plainly, concisely and without argumentation the legal basis upon which error is assigned." N.C. R. App. P. 10(c)(1). Further, the numbered arguments contained in defendant's brief fail to comply with the rules. Rule 28(b)(5) requires that each question raised by

the appellant "shall be separately stated. Immediately following each question shall be a reference to the assignments of error pertinent to the question, identified by their numbers and by the pages at which they appear in the printed record on appeal." N.C. R. App. P. 28(b)(5). Defendant in the present case has set forth several arguments in his brief with a cluster of assignments referred to after each such argument. However, each of those arguments includes many subheadings in which separate questions are stated without reference to any assignment of error. This violates the rule that a reference to the assignments of error pertinent to each question be referred to immediately following such question. Therefore, these questions are not properly before this Court and are subject to dismissal. Nevertheless, because we are able with considerable difficulty to determine which assignments may be pertinent to most of the questions presented, and as this is a capital case, we elect in our discretion under Rule 2 of the North Carolina Rules of Appellate Procedure to review the questions raised.

Defendant first argues that in his capital sentencing proceeding, the trial court erroneously allowed into evidence details of his prior criminal activity. Defendant argues that the trial court erred in this regard because it believed that once evidence of prior criminal activity by defendant had been admitted into evidence, it had no choice but to submit to the jury for its consideration the (f)(1) mitigating circumstance that defendant had "no significant history of prior criminal activity." N.C.G.S. § 15A-2000(f)(1) (1997).

The statute governing capital sentencing proceedings mandates that:

> In all cases in which the death penalty may be authorized, the judge *shall include* in his instructions to the jury that it must consider any aggravating circumstance or circumstances or mitigating circumstance or circumstances from the lists provided in subsections (e) and (f) which *may be supported by the evidence* . . . .

N.C.G.S. § 15A-2000(b) (emphasis added). This Court has explained the law regarding submission of the (f)(1) mitigating circumstance as follows:

> "The trial court is required to determine whether the evidence will support a rational jury finding that a defendant has no significant history of prior criminal activity. *State v. Wilson*, 322 N.C.

117, 367 S.E.2d 589 (1988). If so, the trial court has no discretion; the statutory mitigating circumstance must be submitted to the jury, without regard to the wishes of the State or the defendant. *State v. Lloyd*, 321 N.C. 301, 364 S.E.2d 316, *vacated on other grounds*, 488 U.S. 807, 102 L. Ed. 2d 18 (1988)."

*State v. Smith*, 347 N.C. 453, 469, 496 S.E.2d 357, 366 (quoting *State v. Mahaley*, 332 N.C. 583, 597, 423 S.E.2d 58, 66 (1992), *cert. denied*, 513 U.S. 1089, 130 L. Ed. 2d 649 (1995)), *cert. denied*, — U.S. —, — L. Ed. 2d —, 67 U.S.L.W. 3232 (1998). "Significant" means that the defendant's prior criminal activity is likely to influence the jury's sentencing recommendation. *State v. Williams*, 343 N.C. 345, 371, 471 S.E.2d 379, 393 (1996), *cert. denied*, — U.S. —, 136 L. Ed. 2d 618 (1997). The determination of whether a defendant's criminal history is or is not significant requires a quantitative as well as a qualitative analysis of his criminal activity. *State v. Maynard*, 311 N.C. 1, 27, 316 S.E.2d 197, 212, *cert. denied*, 469 U.S. 963, 83 L. Ed. 2d 299 (1984). " '[I]t is not merely the number of prior criminal activities, but the nature and age of such acts that the trial court considers in determining whether . . . a rational juror could conclude that this mitigating circumstance exists.' " *State v. Ball*, 344 N.C. 290, 310, 474 S.E.2d 345, 357 (1996) (quoting *State v. Artis*, 325 N.C. 278, 314, 384 S.E.2d 470, 490 (1989), *sentence vacated on other grounds*, 494 U.S. 1023, 108 L. Ed. 2d 604 (1990)), *cert. denied*, — U.S. —, 137 L. Ed. 2d 561 (1997).

Once a defendant introduces evidence which would support submission of the (f)(1) mitigator, the State is entitled to cross-examine defendant regarding the details of defendant's prior criminal activity and to introduce evidence to fully show the nature of defendant's history of prior criminal activity. *Maynard*, 311 N.C. at 27-31, 316 S.E.2d at 212-14. Defendant testified, in his case in chief, that he had been convicted of several assaults on his wife and girl-friends including two assaults with a deadly weapon (his fists), communicating threats, trespassing, possession of stolen property, and traffic offenses. Defendant testified that this criminal activity resulted in convictions for misdemeanors only. Defendant also admitted to a history of buying, possessing, and selling drugs and that his problems with drugs and alcohol were contributing factors to his past criminal activity. The trial court determined that defendant's testimony would support a rational juror's finding of no significant criminal history. The trial court stated, after reading *Maynard*, that it was clear that the prosecutor could, delve into the details of defend-

ant's prior criminal history by cross-examination of defendant in order to rebut defendant's evidence which tended to support the (f)(1) mitigator.

[3] Defendant argues that before allowing the State to present its rebuttal evidence, the trial court was obligated to first determine that a rational juror could find from the evidence that defendant had no significant history of criminal activity. While the trial court is obligated to make this determination before submitting the (f)(1) mitigator, there is no requirement that it be made prior to admitting the State's rebuttal evidence. Defendant also complains that the trial court erred because it made no findings of fact to explain its decision to submit the (f)(1) mitigating circumstance. There is no such finding requirement.

[4] The State questioned defendant on cross-examination about the details of his criminal history. The State also questioned several witnesses, including defendant's ex-wife and her parents and defendant's former and current girlfriends, about defendant's assaults and his other criminal activity. Once any evidence is introduced in a capital sentencing proceeding tending to show a history of prior criminal activity by defendant, defendant and the State are free to present all evidence available concerning the extent and significance of that history. Accordingly, the trial court did not err by admitting the State's evidence.

[5] Defendant next argues that the State's cross-examination of defendant regarding the details of his criminal history should have been limited to the name of each crime, the time and place of the conviction, and the punishment imposed. Defendant cites *State v. Lynch*, 334 N.C. 402, 409, 432 S.E.2d 349, 352 (1993), and N.C.G.S. § 8C-1, Rule 609(a) in support of this contention. Defendant concedes that the Rules of Evidence do not apply to capital sentencing proceedings but notes that they may be relied upon for guidance on questions of reliability and relevance. *State v. Strickland*, 346 N.C. 443, 460, 488 S.E.2d 194, 204 (1997), *cert. denied*, —— U.S. ——, 139 L. Ed. 2d 757 (1998). Defendant argues that the due process considerations which underscore Rule 609 and preclude cross-examination beyond impeaching a defendant's credibility also apply to capital sentencing proceedings. Defendant contends that because the trial court had not discussed the possibility of submitting the (f)(1) mitigating circumstance when the prosecutor cross-examined defendant about the details of his criminal history, the scope of the

State's cross-examination should have been limited by generally applicable rules of evidence.

The issue in *Lynch* was the proper scope of cross-examination for purposes of impeaching a witness' credibility. In the present case, the State's purpose in cross-examining defendant about his criminal history was to rebut the evidence presented by defendant which might support the jury's finding of the (f)(1) mitigating circumstance. Thus, *Maynard*, rather than *Lynch* and Rule 609(a), controlled the permissible scope of the prosecutor's cross-examination. *Maynard*, 311 N.C. at 27-31, 316 S.E.2d at 212-14. Because *Maynard* permits the State to cross-examine a defendant regarding the details of his criminal history where the (f)(1) mitigator is at issue, the trial court did not err in permitting such cross-examination. Defendant's argument is without merit.

**[6]** Defendant next contends that the trial court erred by submitting the (f)(1) mitigating circumstance to the jury over defendant's objection. Defendant informed the trial court that he would not request submission of the (f)(1) mitigator because his history of beating women was closely related to the manner of death in Ms. Plunkett's murder. Thereafter, over defendant's objection, the trial court submitted the (f)(1) mitigating circumstance. The jury did not find the existence of the (f)(1) mitigator.

Defendant asserts that no reasonable juror could have found that defendant's criminal history was insignificant, and therefore, it was error for the trial court to submit the circumstance. Evidence in the present case tended to show that defendant had been convicted of numerous misdemeanor assaults on females, as well as various other offenses including communicating threats, trespass, and burglary. The most serious of defendant's prior convictions were for assaults on his wife and girlfriends. One of those assaults occurred in 1995, four in 1992, and one in 1989. The trial court concluded from the evidence that a reasonable juror could find that defendant had "no significant history of prior criminal activity," within the meaning of the statute, and that it was required to submit the (f)(1) statutory mitigating circumstance for the jury's consideration. We agree. A rational juror could have found defendant's history of prior criminal activity, which consisted mostly of misdemeanors, to be insignificant with regard to the jury's capital sentencing recommendation. After determining that a rational juror could find the evidence sufficient to support the (f)(1) mitigating circumstance, the trial court was required to submit it to the jury. This argument is without merit.

**[7]** Defendant further contends that several improper arguments made by the prosecutors may have misled the jury into thinking that defendant requested submission of the (f)(1) mitigating circumstance. Defendant did not object to any of those arguments. Where a defendant fails to object to an argument at trial, that defendant must establish that it was so grossly improper that the trial court abused its discretion by failing to intervene *ex mero motu*. To establish such an abuse, defendant must show that the prosecutor's comments so infected the trial with unfairness that they rendered the conviction fundamentally unfair. *State v. Rose*, 339 N.C. 172, 202, 451 S.E.2d 211, 229 (1994), *cert. denied*, 515 U.S. 1135, 132 L. Ed. 2d 818 (1995).

It is error for the State to argue to a jury that a defendant has requested that a particular mitigating circumstance be submitted when, in fact, the defendant has objected to the submission of that mitigating circumstance. *State v. Walker*, 343 N.C. 216, 223, 469 S.E.2d 919, 923, *cert. denied*, —— U.S. ——, 136 L. Ed. 2d 180 (1996). We also noted in *Walker* that where the defendant objects to the submission of a particular mitigating circumstance, the trial court should: (1) "instruct the jury that the defendant did not request that the mitigating circumstance be submitted"; and (2) "inform the jury that the submission of the mitigating circumstance is required as a matter of law because there is some evidence from which the jury could, but is not required to, find the mitigating circumstance to exist." *Id.* at 223-24, 469 S.E.2d at 923.

In the present case, the assistant district attorney argued in her closing statement that due to defendant's pattern of criminal conduct, the jury should not find that defendant had no significant history of prior criminal activity. The State referred to all of the mitigating circumstances jointly at several points in the closing arguments, without always telling the jury that defendant did not request submission of the (f)(1) mitigator. Nevertheless, it is clear from the record that the argument that the mitigating circumstances had been requested by defendant was not directed specifically toward the (f)(1) mitigator, but to the mitigating circumstances in their totality. We have recently held that such an argument does not prejudice defendant. *State v. Billings*, 348 N.C. 169, 186, 500 S.E.2d 423, 433, *cert. denied*, —— U.S. ——, —— L. Ed. 2d ——, 67 U.S.L.W. 3336 (1998).

The State never specifically argued that defendant had requested the (f)(1) mitigating circumstance. In fact, in her first argument to the jury, the assistant district attorney expressly told the jury that the

(f)(1) mitigator was a statutory mitigating circumstance and was not submitted by counsel for defendant. Further, at the close of defendant's capital sentencing proceeding, the trial court quoted a passage from the *Walker* opinion verbatim, in instructing the jury that defendant did not request the (f)(1) mitigating circumstance, and informed the jury that this circumstance must be submitted as a matter of law. We conclude that the State's arguments cannot realistically be deemed to have misled the jury as to whether defendant requested the submission of the (f)(1) mitigating circumstance. Therefore, the trial court did not err in failing to intervene *ex mero motu*. Defendant's argument is without merit.

[8] Defendant also contends that the trial court violated his Sixth Amendment right to the effective assistance of counsel by submitting the (f)(1) mitigating circumstance over defendant's objection. We have previously considered and rejected this argument in *Smith*, 347 N.C. at 470, 496 S.E.2d at 367. This argument is without merit.

[9] Defendant next argues that the trial court erred in allowing the State to discover prejudicial information which was not within the scope of the State's discovery rights. First, defendant contends that the trial court erred in ordering defense counsel to provide the State with a copy of a report from Robert Brown, Jr., M.D. Dr. Brown was employed by the State, on behalf of defendant, to provide the defense with expert testimony regarding defendant's psychiatric condition. Defendant contends that the trial court's order was based on the State's misrepresentation that a judge had previously ordered defendant to turn over copies of Dr. Brown's report to the State.

After defendant pled guilty, the prosecutor explained the prior judge's order to the trial court as follows:

> The [pretrial] judge granted that motion [to produce Dr. Brown's report] and told [defense counsel] that if [defendant] pled guilty to furnish us a copy of Dr. Brown's report or any other doctor that is covered under the statute that we're entitled to . . . .

> And at this time I'm requesting that they furnish us a copy as has been directed by [the pretrial judge] of Dr. Brown's report, which was to be done today.

Defendant says, however, that the judge ruling on pretrial motions had ordered defense counsel only to have Dr. Brown's report in their possession, not to deliver a copy to the prosecutor.

At the hearing on the State's pretrial motion, the judge ruled orally from the bench that:

> The defendant must have in his possession a copy of the mitigation expert's report by July 1st unless the defendant pleads guilty to First Degree Murder at which time he must have it in his possession by June 24th.

Defendant's trial counsel responded, "Okay. That's fair enough." The written pretrial order states that "[the experts'] reports are to be completed by June 24, 1996 if the defendant pleads guilty to First Degree Murder and the only issue to be decided is sentencing."

At trial, defense counsel informed the trial court that they did not have the report because Dr. Brown was still working on it. The trial court instructed defense counsel to have the report finished no later than 27 June 1996 and to deliver a copy to the district attorney at that time. Defense counsel evidently complied with the trial court's instructions and delivered a copy of the report to the prosecutor.

Defendant contends that by misrepresenting the pretrial order, the State was able to persuade the trial court to grant it discovery rights beyond those granted by statute. He argues that because N.C.G.S. § 15A-905(b) is limited to reports from experts defendant intends to call to testify, Dr. Brown's report was not discoverable until defense counsel made the final decision to call him to testify. Thus, defendant concludes that the State was not entitled to a copy of Dr. Brown's report on the first day of the capital sentencing proceeding because defense counsel had not yet made a final decision to call Dr. Brown to testify. Ultimately, defendant decided not to call Dr. Brown to testify or to introduce his report into evidence.

At common law, neither the State nor a defendant enjoyed a right of discovery. *State v. Warren*, 347 N.C. 309, 324, 492 S.E.2d 609, 617 (1997), *cert. denied,* —— U.S. ——, 140 L. Ed. 2d 818 (1998). However, limited rights of discovery for both the State and defendant exist under the Constitution of the United States, *e.g., Brady v. Maryland*, 373 U.S. 83, 10 L. Ed. 2d 215 (1963) (constitutional requirement that the State disclose certain information favorable to defendant prior to trial), and by statute, *e.g.,* N.C.G.S. § 15A-901 to -910 (1997) (statutory rights of discovery for defendant and State).

By statute, the State is entitled to inspect:

> results of reports of physical or mental examinations . . . made in connection with the case . . . which the defendant intends to

introduce in evidence at the trial or which were prepared by a witness whom the defendant *intends* to call at the trial, when the results or reports relate to his testimony.

N.C.G.S. § 15A-905(b) (emphasis added). Once defendant is in possession of the results of an examination of an expert which defendant *intends* to present, the trial court may properly order that the expert reduce those results to writing and provide a copy of the written report to the State. *State v. East*, 345 N.C. 535, 545, 481 S.E.2d 652, 659, *cert. denied*, —— U.S. ——, 139 L. Ed. 2d 236 (1997).

At the time the trial court instructed defendant to provide the State a copy of Dr. Brown's report in the present case, all indications were that defendant intended to call Dr. Brown as an expert witness. At the pretrial hearing which resulted in the initial order, defense counsel told the judge that they "anticipate[d] at least one, and possibly two, experts being called to trial." Dr. Brown's name was included on defendant's witness list. Defendant neither stated nor implied that he did not intend to call Dr. Brown. Further, defendant did not object to the trial court's instruction to give the State a copy of the report by 27 June 1996. Because defendant had indicated his intent to call Dr. Brown as a defense witness at the time of both the pretrial order and the trial court's ruling, the State was entitled to a copy of Dr. Brown's report pursuant to N.C.G.S. § 15A-905(b).

We recently addressed a similar issue in *State v. Warren*. There, the question raised was whether the trial court had authority to compel disclosure of a nontestifying psychologist's report to the State after defendant admitted guilt and after the capital sentencing proceeding was in progress. *Warren*, 347 N.C. at 323-26, 492 S.E.2d at 616-18. As in the present case, at the beginning of the capital sentencing proceeding, the prosecutor in *Warren* requested a copy of the report by a clinical psychologist who had examined defendant, at defendant's request, in preparation for trial. The trial court in *Warren* refused the State's request for a copy of the psychologist's report because defendant had not yet decided whether he would call the psychologist to testify. However, the trial court ultimately ordered disclosure of the psychologist's report to the State on the ground that a forensic psychiatrist who was testifying had reviewed the report. The defendant in *Warren* argued that the State had no constitutional or statutory right to discover the psychologist's report and that the trial court erred in permitting discovery. This Court held that because defendant did not intend to introduce the expert psychologist's

report into evidence and did not call the psychologist to testify, the State had no right to discover the report under N.C.G.S. § 15A-905(b). *Id.* at 324, 492 S.E.2d at 617. However, we emphasized that the trial court retained its inherent power to order discovery, in its discretion, during the capital sentencing proceeding. *Id.* at 325-26, 492 S.E.2d at 617-18.

The present case is distinguishable from *Warren.* Throughout the pretrial hearings and much of the capital sentencing proceeding, counsel for defendant Williams indicated that they intended to call Dr. Brown to testify. By statute, defendant is required to provide the State with expert reports whenever defendant "intends" either calling the expert to testify or introducing the expert's report into evidence. As used in N.C.G.S. § 15A-905(b), "intends" means "[t]o design, resolve, propose" or "[t]o plan for and expect a certain result." *Black's Law Dictionary* 809 (6th ed. 1990). The term "intent" as used in the statute is not synonymous with a defendant's final decision to call an expert witness or present the expert's report.

We have previously noted that a court order enforcing N.C.G.S. § 15A-905(b) requires a defendant to disclose evidence which he "intends" to use as of the time of the ordered disclosure. *State v. Godwin,* 336 N.C. 499, 507, 444 S.E.2d 206, 211 (1994). After the ordered disclosure, however, defendant is free to change his trial strategy or alter the evidence he intends to use. *Id.* Thus, in the present case, the fact that defendant subsequently changed his mind and decided not to act on his original intent to call Dr. Brown is not controlling. Because at the time the trial court ordered discovery defendant intended to call Dr. Brown to testify at the capital sentencing proceeding, the State was entitled to a copy of Dr. Brown's report pursuant to N.C.G.S. § 15A-905(b). The statement by the prosecutor characterizing the order of the judge at the pretrial hearing was irrelevant to this right. This argument is feckless.

**[10]** Defendant also contends that he was deprived of his Sixth Amendment right to the effective assistance of counsel by his trial counsel's failure to object to the prosecutor's alleged misrepresentation of the pretrial order relating to Dr. Brown's report. We disagree.

To establish ineffective assistance of counsel, defendant must satisfy a two-prong test which was promulgated by the United States Supreme Court in *Strickland v. Washington,* 466 U.S. 668, 80 L. Ed. 2d 674 (1984). We recently explained the operation of this test in *State v. Lee*:

[D]efendant must first show that counsel's performance fell below an objective standard of reasonableness as defined by professional norms. [*State v. Braswell*, 312 N.C. 553, 561-62, 324 S.E.2d 241, 248 (1985).] . . . Second, once defendant satisfies the first prong, he must show that the error committed was so serious that a reasonable probability exists that the trial result would have been different absent the error. [*Strickland*, 466 U.S. at 698, 80 L. Ed. 2d at 698.] Thus, defendant must show that the error committed was so grave that it deprived him of a fair trial because the result itself is considered unreliable. *Id.* at 687, 80 L. Ed. 2d at 693.

348 N.C. 474, 491, 501 S.E.2d 334, 345 (1998). In the present case, the State was entitled to a copy of Dr. Brown's report, which defendant contends was disclosed as a result of his trial counsel's failure to object. Because we concluded that the State was entitled to this report, defense counsel's failure to object to it could not constitute ineffective assistance. *Id.* at 492, 501 S.E.2d at 345. The first prong of the *Strickland* test is not satisfied where, as here, defendant cannot establish that his counsel committed an error. *Id.* This argument is without merit.

[11] Defendant next argues that the trial court erred by allowing the State to discover and introduce certain evidence which was derived from Dr. Brown's report. Defendant first contends that the trial court's decision to provide the State a copy of defendant's complete Dorothea Dix Hospital file was error. The trial court ordered that defendant's Dix Hospital records, including his medical, psychiatric, and forensic case files, be produced to the trial court for its review. The trial court then reviewed the files and concluded that the State should have a copy of the complete file.

Defendant further contends that the trial court erred by ordering Dr. Robert Rollins and his case analyst, Dennis Meachum, both of whom participated in determining defendant's competence, to confer with the district attorney on the same basis as they had with defense counsel. Defendant argues that pursuant to N.C.G.S. § 15A-1002, the State was entitled only to a copy of Dr. Rollins' report to the trial court concerning defendant's competency. Defendant says that by granting the State access to defendant's complete Dix Hospital file and by allowing the prosecutor to conduct unrestricted interviews with Dr. Rollins and Mr. Meachum, the trial court exceeded the scope of N.C.G.S. § 15A-1002.

Defendant distinguishes the present case from others where defendants are sent to Dix Hospital solely for a competency evaluation and where the examining psychiatrist is a witness for the court. Defendant contends that he was sent to Dix Hospital in part for a competency evaluation, but also for possible treatment of suicidal thoughts and evaluation for possible defense and mitigation purposes. Thus, defendant argues that anything in the Dix Hospital records or known to Dr. Rollins or Mr. Meachum regarding defendant's treatment for suicidal tendencies would be protected by the psychologist-client privilege. Further, defendant argues that any information available for these purposes was privileged as attorney work product, until defendant decided to call a mental health expert to testify.

Defendant asserts that under N.C.G.S. § 8-53.3, a trial court may compel disclosure of psychologist-client privileged communications only if it is necessary to a proper administration of justice. Defendant says that in this case, there is no indication that the trial court understood that it was compelling disclosure of privileged communications or that the disclosure was necessary to a proper administration of justice. He says that because he had not yet decided whether to call a mental health expert, there was no reason necessary to a proper administration of justice to require disclosure of the communications in question. Defendant argues that by compelling the disclosure of privileged information, the trial court violated his federal and state constitutional rights.

This Court has held that no psychologist-client privilege is created when a defendant is examined by a psychologist appointed by the trial court, at the request of defendant, for purposes of evaluating defendant's mental status. *East*, 345 N.C. at 545, 481 S.E.2d at 659-60; *see also State v. Taylor*, 304 N.C. 249, 271, 283 S.E.2d 761, 776 (1981) (no physician-patient privilege where physician examines defendant in order to determine whether defendant is competent to stand trial), *cert. denied*, 463 U.S. 1213, 77 L. Ed. 2d 1398 (1983). In the present case, Dr. Rollins and Mr. Meachum were appointed to determine defendant's competency. The court order committing defendant to Dix Hospital does mention that defendant had expressed "suicidal thoughts," but the record reveals that the objective of defendant's commitment was a competency and mental health evaluation. There is no indication in the record that Dr. Rollins and Mr. Meachum examined or communicated with defendant for any purpose other than determining defendant's competency. Therefore,

under *East*, defendant's communications with Dr. Rollins and Mr. Meachum were not protected by physician-patient, psychologist-client, or attorney work product privileges.

Assuming *arguendo* that defendant's communications with Dr. Rollins and Mr. Meachum were privileged, the trial court had authority to compel disclosure of such privileged communications if it was "necessary to the proper administration of justice." N.C.G.S. § 8-53.3 (1997). "The decision that disclosure is necessary to [assure] a proper administration of justice 'is one made in the discretion of the trial judge, and the defendant must show an abuse of discretion in order to successfully challenge the ruling.'" *Smith*, 347 N.C. at 461, 496 S.E.2d at 362 (quoting *State v. Drdak*, 330 N.C. 587, 592, 411 S.E.2d 604, 607 (1992)). Defendant has failed to show that the trial court abused its discretion in ordering Dr. Rollins and Mr. Meachum to confer with the prosecutor in this case. As defendant has noted, N.C.G.S. § 15A-1002(d) addresses only court-ordered evaluations of criminal defendants and the resulting reports. However, the limited scope of this statute does not preclude the trial court from exercising its discretion to compel discovery of other related documents when it is necessary to assure a proper administration of justice. Defendant says in the instant case that the trial court erred by failing to make findings and a conclusion that disclosure was necessary to a proper administration of justice. We held in *Smith*, however, that "N.C.G.S. § 8-53 does not require such an explicit finding" and that such a "finding is implicit in the admission of the evidence." *Smith*, 347 N.C. at 461, 496 S.E.2d at 362. These arguments are without merit.

[12] Defendant next contends that the trial court erred in allowing Cyril Jarrett, a health care technician supervisor at Dix Hospital, to testify regarding a verbal altercation which he observed between Dix Hospital personnel and defendant. The day before Mr. Jarrett was called to the stand, defense counsel announced that they had decided not to call Dr. Brown, the psychiatrist appointed by the trial court at the request of defense counsel. The trial court granted defendant's related motion to prohibit the State from using any and all records or information obtained from Dr. Brown, including the Dix Hospital records. The prosecutor stated that he had learned of the incident which Mr. Jarrett witnessed by reading defendant's Dix Hospital files. Nonetheless, the trial court allowed Mr. Jarrett to testify because the incident in question was simply an act observed by a "custodial keeper," not much different from an incident which might occur in any detention facility.

The altercation described by Mr. Jarrett was not directly related to defendant's treatment, evaluation, or any other private interviews with Dix Hospital staff. In his testimony, Mr. Jarrett described an incident which occurred when defendant took two cups of tea in the cafeteria line, rather than the one allotted him. Mr. Jarrett testified that when an attendant told defendant not to take two cups of tea, defendant used profanity and threatened to fight the attendant and Mr. Jarrett. Mr. Jarrett testified that defendant continued to act as if he wanted to start a fight with the attendant for some time after the altercation. This incident occurred on the day before defendant was to return from Dix Hospital to Central Prison.

Defendant argues that Mr. Jarrett's testimony should have been precluded as "fruit of the poisonous tree," because the State learned of Mr. Jarrett and his evidence by reading defendant's records from Dix Hospital. Defendant reasons that the trial court's order allowing the prosecutor to have a copy of defendant's complete Dix Hospital file violated defendant's constitutional rights, and therefore, any evidence derived from the records was not admissible. Defendant further contends that the prosecutor used the incident described by Mr. Jarrett to make improper closing arguments about defendant's bad behavior in jail and future dangerousness, and therefore, Mr. Jarrett's testimony cannot be found harmless.

Assuming *arguendo* that the prosecutor had no right to discover a copy of defendant's complete Dix Hospital file, the trial court nonetheless correctly allowed Mr. Jarrett to testify for the purpose of ensuring the proper administration of justice. This Court has held that evidence which might not otherwise be admissible against a defendant may be admissible to explain or rebut other evidence introduced by the defendant himself. *Maynard*, 311 N.C. at 28, 316 S.E.2d at 212. In the present case, defendant introduced evidence through the testimony of Mary Whitaker, who conducted religious services at Bertie-Martin Regional Jail. Ms. Whitaker described defendant's participation in her ministry while he was in the jail and said that defendant treated her with respect and honor. The trial court properly allowed the State to rebut this evidence with Mr. Jarrett's testimony. *Maynard*, 311 N.C. at 25-26, 316 S.E.2d at 21-22; *State v. Silhan*, 302 N.C. 223, 273, 275 S.E.2d 450, 484 (1981), *overruled on other grounds by State v. Sanderson*, 346 N.C. 669, 488 S.E.2d 133 (1997). Had the trial court not allowed Mr. Jarrett to testify, defendant would have gained an unfair advantage by keeping relevant rebuttal evidence from the jury, and the State would have been denied

the proper administration of justice. *See East*, 345 N.C. at 545-46, 481 S.E.2d at 660.

**[13]** As to the closing arguments, the record indicates that the State used Mr. Jarrett's testimony only to rebut Ms. Whitaker's testimony that defendant was respectful. The essence of the State's argument was that defendant treats people honorably and with respect only when he needs something from them. The district attorney used as an example the incident described by Mr. Jarrett, arguing that when defendant was ready to be discharged from Dix Hospital, he began to curse and threaten the staff there. The district attorney suggested that defendant's seemingly remorseful performance on the witness stand was an attempt to manipulate the jury. We have previously held that a prosecutor may urge the jury to recommend death out of concern for the future dangerousness of the defendant. *State v. Conner*, 345 N.C. 319, 333, 480 S.E.2d 626, 632-33, *cert. denied*, —— U.S. ——, 139 L. Ed. 2d 134 (1997). There was nothing improper about the prosecutor's closing argument regarding the incident described by Mr. Jarrett.

Defendant next contends that the trial court erred when it failed to (1) rule on defendant's pretrial motions to limit the prosecutor's line of questioning, and (2) give curative instructions after the prosecutor asked improper questions about defendant's conduct in jail. Defendant asserts that these errors violated his constitutional due process rights. Defendant filed one pretrial motion to limit the State's sentencing evidence to matters relevant to aggravating circumstances, and another motion to limit the State's rebuttal to disproving any mitigating circumstances. The court did not rule on either motion prior to the capital sentencing proceeding. During defendant's capital sentencing proceeding, the prosecutor asked defendant and a jailer several questions about defendant's conduct in jail. The prosecutor asked defendant whether he "was selling dope down there" and "if he was running the jail down there." The prosecutor also asked defendant if he had assaulted people while he was in jail. The prosecutor asked similar questions of the jailer. The trial court sustained defendant's objections to all of these questions. After the trial court sustained defendant's objections, defendant did not request and the court did not give any additional curative instructions. Defendant now contends that the trial court's failure to act *ex mero motu* and give curative instructions was error.

**[14]** A defendant is entitled to a new trial on the basis of an improper question only if there is a reasonable possibility that the improper

question affected the outcome of his trial. N.C.G.S. § 15A-1443(a) (1997); *State v. Knight*, 340 N.C. 531, 564, 459 S.E.2d 481, 501 (1995). We have previously held that a trial court does not commit reversible error when it fails to give a curative jury instruction absent a request by defendant. *State v. Norwood*, 344 N.C. 511, 537, 476 S.E.2d 349, 361 (1996), *cert. denied*, —— U.S. ——, 137 L. Ed. 2d 500 (1997); *State v. Rowsey*, 343 N.C. 603, 628, 472 S.E.2d 903, 916 (1996), *cert. denied*, —— U.S. ——, 137 L. Ed. 2d 221 (1997). Defendant has failed to show that the mere asking of these questions, to which objections were sustained, prejudiced him. *See Knight*, 340 N.C. at 564, 459 S.E.2d at 501. As in *Rowsey*, the trial court's action in the instant case of promptly sustaining defendant's objections was sufficient to cure any error. *Rowsey*, 343 N.C. at 628, 472 S.E.2d at 916.

In addition, at the opening of the capital sentencing proceeding, the trial court gave the jury general instructions regarding evidentiary rulings:

> Now, if there is an objection and you hear me say overruled, don't give the answer of that witness anymore weight simply because there was an objection to the question. . . . Likewise, if I sustain an objection and you don't hear the answer, don't speculate or guess what you think that witness was going to say.

Jurors are presumed to follow instructions given by the trial court. *State v. Rouse*, 339 N.C. 59, 92, 451 S.E.2d 543, 561 (1994), *cert. denied*, 516 U.S. 832, 133 L. Ed. 2d 60 (1995). Defendant's argument is without merit.

Defendant next argues that the trial court erred when it failed to intervene *ex mero motu* to give curative instructions to the jury regarding certain argumentative questions posed by the prosecutor. Defendant contends that the prosecutor repeatedly asked rhetorical and argumentative questions which cast defendant in an unfavorable light. The questions complained of were raised during the State's cross-examination of defendant and defense witness Mary Whitaker as well as during the direct examination of several State's witnesses. The trial court sustained defendant's objections to these questions, but defendant argues that the court also should have given the jury curative instructions. As we have already stated, it is not error for the trial court to fail to give a curative jury instruction after sustaining an objection, when defendant does not request such an instruction. *E.g.*, *Norwood*, 344 N.C. at 537, 476 S.E.2d at 361. Accordingly, this argument has no merit.

Defendant next argues that the trial court erred in failing to intervene *ex mero motu* when the State made improper closing arguments. With one exception noted below, defendant did not object to these arguments at trial. We have held repeatedly that arguments to which defendant does not object at trial " 'must be gross indeed for this Court to hold that the trial court abused its discretion in not recognizing and correcting *ex mero motu* the comments regarded by defendant as offensive only on appeal.' " *E.g., Conner*, 345 N.C. at 334, 480 S.E.2d at 633 (quoting *State v. Brown*, 327 N.C. 1, 19, 394 S.E.2d 434, 445 (1990)). Prosecutors have a duty to advocate zealously that the facts in evidence warrant imposition of the death penalty, and they are permitted wide latitude in their arguments. *Id.* Having examined the arguments complained of in light of these principles, we conclude that they were not so grossly improper that the trial court was required to intervene *ex mero motu*. We now address each argument in turn.

[15] Defendant first contends that the State argued to the jury that the capital sentencing proceeding was an unjust demand made by the defendant and that defendant was especially worthy of receiving the death sentence for having made this demand. Defendant points to the following rhetorical question posed by the assistant district attorney near the opening of her argument:

> How dare he take a life of an 80-year-old defenseless woman and sit in here and ask you not to do what you know is proper and just based upon the facts and the law in this particular case.

Defendant contends that because this argument blames him for the capital sentencing proceeding required by law, it was grossly improper and prejudicial. The State asserts, and we agree, that the gist of this argument was that the facts and law justified the death penalty and that defendant's plea for mercy should be disregarded. This argument was well within the wide latitude afforded prosecutors in arguing contested cases.

[16] Defendant next complains that the State improperly used biblical references in arguing its case to the jury. In her closing arguments, the assistant district attorney made the following argument:

> And I believe Mr. Warmack or Mr. Dixon [defense counsel] may stand up here and tell you . . . that they think capital punishment may be somehow contrary to Christian ethics. . . . And they may quote such chapters from the Bible as thou shall not kill and things like that, ladies and gentlemen.

I want to quote a few things to you first of all. And right behind thou shall not kill in the book of Exodus in verse 21, chapter 21, verse 12, it says: He that smiteth a man, so that he die, shall be surely put to death. . . .

And right behind that, ladies and gentlemen, in Numbers, chapter 35, verse 18, it states: Or if he smite him with a hand weapon of wood, wherewith he may die, and he die, he is a murderer: the murderer shall surely be put to death. That's in the Book of Numbers. . . .

So these things shall be a statute of judgment unto you throughout your generation and in all your dwellings. Whoever killeth any person, the murderer shall be put to death by the mouth of the witnesses. And moreover, you shall take no satisfaction for the life of a murderer which he is guilty of death but he shall surely be put to death.

Ladies and gentlemen, none of us and none of you in this courtroom, . . . are going to be sitting on that jury taking joy in what you have to do today. . . . But that doesn't make it any less necessary, ladies and gentlemen, based on the facts and based on the law . . . .

The statute of judgment. That's what this Bible—what this good book says, ladies and gentlemen, the statute of judgment. And we are trying this case under statute 15A-2000, ladies and gentlemen. That's the statute of judgment and that's what his honor is going to give.

Defendant contends that the prosecutor improperly equated the death penalty statute, N.C.G.S. § 15A-2000, with the biblical statute of judgment. Defendant acknowledges that this Court has held some religious arguments not to be so *grossly* improper as to mandate the trial court's intervention. *State v. Brown*, 320 N.C. 179, 206, 358 S.E.2d 1, 19, *cert. denied*, 484 U.S. 970, 98 L. Ed. 2d 406 (1987). However, defendant asks this Court to reconsider its decisions regarding such theological arguments in light of the First Amendment's separation of church and state and defendant's right to due process. We have recently considered and rejected a similar argument regarding the prosecutor's use of biblical references in arguments to the jury. *State v. Walls*, 342 N.C. 1, 60-61, 463 S.E.2d 738, 770 (1995), *cert. denied*, 517 U.S. 1197, 134 L. Ed. 2d 794 (1996). We note that, as in *Walls*, the prosecutor in the present case clearly told the

jury that it should make its sentencing decision based on the law and the evidence presented in the case. We continue to hold that it is not so grossly improper for a prosecutor to argue that the Bible does not prohibit the death penalty as to require intervention *ex mero motu* by the trial court, *but we discourage such arguments. Brown*, 320 N.C. at 206, 358 S.E.2d at 19. We caution all counsel that they should base their jury arguments solely upon the secular law and the facts. Jury arguments based on any of the religions of the world inevitably pose a danger of distracting the jury from its sole and exclusive duty of applying secular law and unnecessarily risk reversal of otherwise error-free trials. *See, e.g., State v. Ingle*, 336 N.C. 617, 648, 445 S.E.2d 880, 896-97 (1994), *cert. denied*, 514 U.S. 1020, 131 L. Ed. 2d 222 (1995); *State v. Moose*, 310 N.C. 482, 501, 313 S.E.2d 507, 519-20 (1984); *State v. Oliver*, 309 N.C. 326, 359-60, 307 S.E.2d 304, 326 (1983). Although we may believe that parts of our law are divinely inspired, it is the secular law of North Carolina which is to be applied in our courtrooms. Our trial courts must vigilantly ensure that counsel for the State and for defendant do not distract the jury from their sole and exclusive duty to apply secular law. Nevertheless, particularly in light of the trial court's final instructions directing the jury in the present case to apply the law as given them by the trial court and not by counsel, we do not find the argument complained of here to be so grossly improper as to have required the trial court to intervene *ex mero motu*. This argument is without merit.

[17] Defendant next complains that the district attorney improperly alluded to defendant's future dangerousness and the possibility of parole in the following portion of his closing argument:

> You can go down that list of about 30 of them. He knew exactly what he was doing. They say that is a mitigating factor? And by God you ought to believe what this guy has told you, the biggest whoppers in the world, and turn him loose? I say turn him loose. Don't give him the death penalty. Don't give him the death penalty. And they think he's going to be an Angel. Think of Cyril Jarrett. As soon as he gets past whatever he got, then he changes.

Defendant contends that in this argument, the prosecutor improperly implied that defendant might get parole, even if he was sentenced to life without parole, and that when defendant was "loose," he would be dangerous.

This Court has consistently held that the possibility of parole is not a proper consideration in a capital sentencing proceeding. *See,*

*e.g., State v. Warren*, 348 N.C. 80, 122, 499 S.E.2d 431, 455, *cert. denied,* —— U.S. ——, —— L. Ed. 2d ——, 67 U.S.L.W. 3238 (1998); *State v. Conaway*, 339 N.C. 487, 520, 453 S.E.2d 824, 845, *cert. denied,* 516 U.S. 884, 133 L. Ed. 2d 153 (1995). However, we have considered and rejected an argument similar to that made here by defendant. *State v. Carter*, 342 N.C. 312, 324, 464 S.E.2d 272, 279-80 (1995), *cert. denied,* 517 U.S. 1225, 134 L. Ed. 2d 957 (1996). Here, as in *Carter*, the prosecutor never used the word "parole" and never mentioned the possibility that a life sentence could mean that defendant would eventually be released. When read in context, the prosecutor's argument focused on defendant's inability to adapt to prison life if given a life sentence. The prosecutor's argument also suggested that the death penalty would specifically deter defendant from committing future crimes. We have previously held that it is not improper for a prosecutor to urge the jury to recommend death out of concern for the future dangerousness of the defendant. *E.g., State v. Locklear*, 349 N.C. 118, 164, 505 S.E.2d 277, 304 (1998); *State v. Larry*, 345 N.C. 497, 527-28, 481 S.E.2d 907, 925, *cert. denied,* —— U.S. ——, 139 L. Ed. 2d 234 (1997); *Conner*, 345 N.C. at 333, 480 S.E.2d at 632-33. Defendant's argument is without merit.

**[18]** Defendant next argues that the district attorney improperly based part of his closing argument on his personal knowledge and opinions, not supported by evidence. Defendant points to an argument in which the district attorney questioned defendant's claim that he did not remember attacking Ms. Plunkett because he had been using crack cocaine. The district attorney argued, "Crack is a stimulant. Crack is something that makes you aware of everything that is going on." The trial court overruled defendant's objection to this argument. Defendant contends that this statement reflected the district attorney's personal opinion and was not supported by any testimony or other evidence. Defendant further argues that this statement was inaccurate because (1) cocaine affects different people differently; and (2) defendant was mixing alcohol and cocaine, which could have altered the effect of each substance.

We have held that it is improper for counsel to inject their personal beliefs or facts outside the record into jury arguments. *East,* 345 N.C. at 555, 481 S.E.2d at 665. However, counsel may argue all the facts in evidence as well as any reasonable inferences drawn therefrom. *Id.* We agree with defendant that no evidence in the record supports the prosecutor's characterization of the effects of crack cocaine. However, even though the prosecutor's argument was

improper, defendant is entitled to a new capital sentencing proceeding only if the statement in question " 'so infected the trial with unfairness' " as to deny defendant due process of law. *State v. McCollum*, 334 N.C. 208, 224, 433 S.E.2d 144, 152 (1993) (quoting *Darden v. Wainwright*, 477 U.S. 168, 181, 91 L. Ed. 2d 144, 157 (1986)), *cert. denied*, 512 U.S. 1254, 129 L. Ed. 2d 895 (1994). We conclude that when considered in the context of the State's lengthy closing remarks, this very brief argument had no such effect.

In addition, prior to the beginning of closing arguments, the trial court instructed the jury that it was improper for lawyers to rely on personal experiences or beliefs in their arguments and that jurors should disregard any such personal opinions. The trial court also instructed the jury:

> If in the course of making a final argument a lawyer attempts to restate a portion of the evidence and your recollection of that evidence differs from that of counsel, then you are, in remembering and recalling that evidence, to be guided by your own recollection, not by that of counsel's.

These instructions were sufficient to cure any prejudice resulting from the district attorney's improper injection of personal beliefs into his argument. *State v. Small*, 328 N.C. 175, 186, 400 S.E.2d 413, 419 (1991). This argument is without merit.

**[19]** Defendant next argues that the trial court erred in allowing the State's motions to excuse prospective jurors for cause based on their opposition to capital punishment, without giving defendant the opportunity to rehabilitate them. Defendant concedes that the trial court excused many of these prospective jurors after they answered unequivocally that they could not vote to recommend a death penalty. Defendant acknowledges this Court's repeated holdings that the decision whether to allow rehabilitation of such a juror is in the sound discretion of the trial court. However, defendant contends that such "barebones acceptance" of a prospective juror's answer regarding the death penalty allows individuals so inclined to use death qualification questions as a means of escaping jury duty. Defendant also asserts that allowing him to examine prospective jurors only after death qualification violates his rights to a fair and impartial jury.

We recently summarized the law regarding the death qualification of jurors in *State v. Cummings*:

Prospective jurors in a capital case must be able to state clearly that " 'they are willing to temporarily set aside their own beliefs [concerning the death penalty] in deference to the rule of law.' " *State v. Brogden*, 334 N.C. 39, 43, 430 S.E.2d 905, 907-08 (1993) (quoting *Lockhart v. McCree*, 476 U.S. 162, 176, 90 L. Ed. 2d 137, 149 (1986)). The standard for determining whether a prospective juror may properly be excused for cause for his views on capital punishment is whether those views would " 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.' " *Wainwright v. Witt*, 469 U.S. 412, 424, 83 L. Ed. 2d 841, 851-52 (1985) (quoting *Adams v. Texas*, 448 U.S. 38, 45, 65 L. Ed. 2d 581, 589 (1980)). The decision to excuse a juror is within the discretion of the trial court because "there will be situations where the trial judge is left with the definite impression that a prospective juror would be unable to faithfully and impartially apply the law." *Id.* at 425-26, 83 L. Ed. 2d at 852.

346 N.C. 291, 312, 488 S.E.2d 550, 562-63 (1997), *cert. denied*, —— U.S. ——, 139 L. Ed. 2d 873 (1998). In the present case, each of the twenty-eight prospective jurors who are the subject of this argument indicated that he or she could not vote to recommend the death penalty under any circumstances. These jurors' responses to a series of questions by the State concerning their views about the death penalty, as well as the clarifying questions by the trial court, clearly demonstrated their unequivocal opposition to capital punishment. Therefore, applying the *Wainwright* standard, the trial court properly excused these jurors for cause.

Defendant also argues that he should have been allowed to rehabilitate other prospective jurors excused for cause who he contends did not unequivocally state their opposition to the death penalty. Defendant contends that prospective jurors Grandy, Parker, Cherry and Winston were dismissed after they stated that they were unable to judge others, not that they would not be able to vote for the death penalty. Contrary to defendant's contentions, a review of the record reveals that each of these jurors clearly stated that their strong personal beliefs would prevent them from voting to recommend the death penalty.

Defendant further complains that a metaphor of boxes representing people who support the death penalty and those opposed to it, was improperly used by the trial court and the prosecutor to trap

prospective jurors Ethel Bound Outlaw and William Outlaw into stating that they could not vote for the death penalty because of their personal or religious beliefs. This argument is feckless.

The extent and manner of jury *voir dire* rests within the sound discretion of the trial court, and the trial court's rulings will not be overturned absent a showing of an abuse of discretion. *State v. Hipps*, 348 N.C. 377, 390, 501 S.E.2d 625, 633 (1998); *State v. Richardson*, 346 N.C. 520, 529, 488 S.E.2d 148, 153 (1997), *cert. denied*, —— U.S. ——, 239 L. Ed. 2d 652 (1998). It is well established that a trial court does not abuse its discretion by denying defendant an attempt to rehabilitate a juror unless defendant can show that further questions would have produced different answers by the juror. *State v. Alston*, 341 N.C. 198, 222-23, 461 S.E.2d 687, 699-700 (1995), *cert. denied*, 516 U.S. 1148, 134 L. Ed. 2d 100 (1996). After carefully reviewing the record, we conclude that all of the prospective jurors in question stated with unmistakable clarity that their personal or religious beliefs would prevent them from voting to recommend the death penalty under any circumstances. Before dismissing each of these prospective jurors, the trial court asked final questions to clarify the juror's inability to recommend the death penalty. Thus, the trial court did not abuse its discretion when it granted the State's motions to excuse these prospective jurors for cause without offering defendant an opportunity to rehabilitate them.

[20] Defendant next argues that the trial court erred by denying his request for peremptory instructions on the statutory mitigating circumstance concerning his inability to appreciate the criminality of his conduct or to conform his conduct to the law, N.C.G.S. § 15A-2000(f)(6). We disagree. Defendant contends that uncontroverted evidence at trial tended to show that defendant was "on an uncontrollable crack binge on the night of the crime and could not have possibly conformed his behavior or understood what terrible things he was capable of doing." Defendant argues that, given this evidence, the trial court was required to give a peremptory instruction on the (f)(6) mitigating circumstance.

A trial court is required to give a peremptory instruction regarding a statutory mitigating circumstance only when all evidence supports that circumstance. *Warren*, 347 N.C. at 320, 492 S.E.2d at 615. Defendant is not entitled to a peremptory instruction on a statutory mitigating circumstance if the evidence of that circumstance is controverted. *State v. Womble*, 343 N.C. 667, 683, 473 S.E.2d 291, 300 (1996), *cert. denied*, —— U.S. ——, 136 L. Ed. 2d 719 (1997). In the

*instant case, the evidence of the existence of the statutory mitigating*
circumstance regarding defendant's capacity to appreciate the crimi-
nality of his conduct and conform his conduct to the law was con-
troverted. Defendant's own testimony at trial indicated that he
understood the wrongfulness of his conduct at the time of the killing.
Defendant testified that he went to Ms. Plunkett's home with the
intent to rob her because he remembered that she had money and
that she lived alone. Defendant also testified that throughout the
early evening of 27 October 1995, he had begged his family and
friends to give him money and had stolen or attempted to steal items
so that he could sell them for money to buy cocaine. These incidents
occurred only a few hours before defendant killed Ms. Plunkett.

Defendant described his efforts to steal something from his
mother's home on that evening:

> So my mind told me, something told me, it said you ought to just
> rob your mama. But then I didn't do it. But I was really trying to
> find something that I could get to sell like a VCR or something
> like that. You know, she was up there in the room so there wasn't
> no way I could take it out without her seeing me. So I just left.

This testimony tends to show that defendant knew it was wrong to
steal and that he needed to avoid being seen and apprehended. It also
tends to show defendant's ability to conform his conduct to the law,
because he left his mother's home without stealing anything.

Defendant's ability to understand the criminality of his conduct is
further supported by evidence tending to show that after he assaulted
Ms. Plunkett and saw people and lights outside her home, he escaped
by jumping out of a side window and running into the woods. The
State's evidence tended to show that after he escaped into the woods,
defendant discarded the shirt he had been wearing during the break-
ins and assaults at the Whitney and Plunkett homes. Defendant also
stated that he and others had previously discussed breaking into the
Whitney and Plunkett homes because they had seen Ms. Whitney and
Ms. Plunkett shopping with cash. The foregoing evidence is incon-
sistent with the (f)(6) mitigating circumstance. Therefore, the trial
court did not err in denying defendant's request for a peremptory
instruction. This argument is without merit.

[21] Defendant next argues that the trial court erroneously defined
the concept of a "mitigating circumstance" in its instructions to the
jury. Defendant argues that the trial court improperly refused to give

the jury an instruction he requested which he contends better defined the meaning of mitigation than that given by the trial court. The trial court defined a "mitigating circumstance" as follows:

> A mitigating circumstance is a fact or group of facts which do not constitute a justification or excuse for a killing or reduce it to a lesser degree of crime than first degree murder, but which may be considered as extenuating or reducing the moral culpability of the killing or making it less deserving of extreme punishment than other first degree murders.

This instruction is virtually identical to one which was approved by this Court in *State v. Hutchins*, 303 N.C. 321, 279 S.E.2d 788 (1981), and is part of the North Carolina pattern jury instructions, N.C.P.J.I. Crim. 150.10 (1997). *State v. Harden*, 344 N.C. 542, 564, 476 S.E.2d 658, 669-70 (1996), *cert. denied*, —— U.S. ——, 137 L. Ed. 2d 483 (1997). It was correct.

Immediately following the above definition, the trial court further instructed the jury:

> Our law identifies several possible mitigating circumstances. However, in considering Issue Two, it would be your duty to consider as a mitigating circumstance any aspect of the defendant's character or record and any of the circumstances of this murder that the defendant contends is a basis for a sentence less than death and any other circumstance arising from the evidence which you deem to have mitigating value.

> Put another way, in addition to factors extenuating the gravity of the offense, you may also consider any aspect of the defendant's character or background as a factor having mitigating value.

Defendant argues that the trial court's instructions defined "mitigation" too narrowly and limited the jury's consideration of defendant's character and background as a basis for a sentence of life in prison without parole. This court has consistently rejected defendant's contention. *See, e.g.*, *Conaway*, 339 N.C. at 534, 453 S.E.2d at 854; *State v. Keel*, 337 N.C. 469, 493, 447 S.E.2d 748, 763 (1994), *cert. denied*, 513 U.S. 1198, 131 L. Ed. 2d 147 (1995). The trial court's instructions in the instant case are virtually identical to instructions which this Court has held to be "a correct statement of the law of mitigation." *Conaway*, 339 N.C. at 534, 453 S.E.2d at 854. We conclude that the trial court's instructions did not preclude the jury from con-

sidering any aspect of defendant's character or background or any of the circumstances of the killing that defendant may have presented as a basis for a sentence less than death. In addition, we have previously held that a trial court's refusal to give a defendant's proffered definition of mitigating circumstances is not error when the trial court gives a proper instruction defining that term. *State v. Jones*, 336 N.C. 229, 259-60, 443 S.E.2d 48, 63-64, *cert. denied*, 513 U.S. 1003, 130 L. Ed. 2d 423 (1994). This argument is without merit.

Defendant next argues that the trial court erred by denying his motions *in limine* to limit the use of photographs which depicted the crime scene and the victim when she was alive as well as after the attack by defendant. Defendant contends that these photographs were inflammatory and that their probative value was greatly outweighed by the danger of unfair prejudice. N.C.G.S. § 8C-1, Rule 403 (1992). We disagree.

The Rules of Evidence do not apply in capital sentencing proceedings. N.C.G.S. § 8C-1, Rule 1101(b)(3) (1992). Any evidence "relevant to sentence" may be introduced at this stage. *State v. Holden*, 346 N.C. 404, 418, 488 S.E.2d 514, 521 (1997), *cert. denied*, —— U.S. ——, 140 L. Ed. 2d 132 (1998); *accord* N.C.G.S. § 15A-2000(a)(3). During a capital sentencing proceeding, the State may present any competent evidence which supports the imposition of the death penalty, including photographs of the victim. *Warren*, 347 N.C. at 316, 492 S.E.2d at 612. Photographs which depict the circumstances of the murder, the condition of the body, or the location of the body when found are relevant and admissible at sentencing, even when the victim's identity and the cause of death are not in dispute at trial. *Conaway*, 339 N.C. at 525, 453 S.E.2d at 848. This is true even if the photographs are gory or gruesome. *Id.*

[22] In the present case, the prosecutor introduced eighteen photographs of the victim's house and neighborhood to illustrate the testimony of one of Ms. Plunkett's neighbors, Marilyn Gilliam, and Ms. Plunkett's nephew, Norman Cherry, Sr., regarding what they saw on the night of the crime. Mr. Cherry also referred to one photograph of the victim on the night of the assault which was admitted to illustrate his testimony regarding the injuries he observed. Two photographs of the victim in the hospital on the day after the assault were admitted to illustrate the testimony of the victim's nephew, William Peele, and brother-in-law, Clarence McGlohon, about the injuries they observed following the assault. The trial court also admitted five photographs

of the victim taken by the forensic pathologist who performed the autopsy. The pathologist referred to these photographs in testifying about the injuries to the victim's head and vaginal area that he observed during his autopsy. All of these photographs were properly admitted to illustrate witnesses' testimony. The photographs of Ms. Plunkett on the day after the assault were also properly admitted to describe the injuries she suffered. *State v. Lynch*, 340 N.C. 435, 461, 459 S.E.2d 679, 691 (1995), *cert. denied*, 517 U.S. 1143, 134 L. Ed. 2d 558 (1996). Further, these photographs were relevant to the issue of whether the murder was heinous, atrocious or cruel. *Id.*

**[23]** In addition to the photographs described above, defendant complains that the trial court erroneously admitted a particular photograph of the crime scene, Ms. Plunkett's bedroom, which showed a crucifix over Ms. Plunkett's bed. The district attorney referred to this photograph in making a closing argument that Ms. Plunkett believed in the sanctity of her home and that the law should protect her in her home. Defendant contends that the prosecutor was improperly allowed to misuse this photograph to establish a prejudicial "religious overlay" in his closing statement. The prosecutor's argument relating to this photograph did not refer to religion. Nor did the fact that the crime scene photograph showed the cross over Ms. Plunkett's bed so infect the trial with unfairness as to violate defendant's due process rights. Defendant also complains of a single photograph of the victim as she appeared before the murder. It is not error during a capital sentencing proceeding to admit a photograph of the victim as she appeared when she was alive. *Harden*, 344 N.C. at 559, 476 S.E.2d at 667. The State may use such photographs of the victim to emphasize to the jury that she was once alive, that she is now dead, and that defendant was the person responsible for her death. *See Payne v. Tennessee*, 501 U.S. 808, 823-24, 115 L. Ed. 2d 720, 735 (1991). Whether photographic evidence is more probative than prejudicial is a matter within the trial court's discretion. *Warren*, 347 N.C. at 316, 492 S.E.2d at 612. Here, defendant has failed to show that the trial court abused its discretion by admitting the photographs in question. Accordingly, this argument is without merit.

**[24]** Defendant next argues that North Carolina's death penalty is unconstitutional. Defendant acknowledges this Court's repeated holdings that the North Carolina death penalty statute, N.C.G.S. § 15A-2000, is constitutional. *State v. Stephens*, 347 N.C. 352, 368, 493 S.E.2d 435, 445 (1997), *cert. denied*, —— U.S. ——, —— L. Ed. 2d ——, 67 U.S.L.W. 3231 (1998); *State v. Garner*, 340 N.C. 573, 605, 459 S.E.2d

718, 735 (1995), *cert. denied*, 516 U.S. 1129, 133 L. Ed. 2d 872 (1996); *Jones*, 336 N.C. at 261, 443 S.E.2d at 64. However, defendant asks this Court to reconsider its position in light of Justice Blackmun's dissenting opinion in *Callins v. Collins*, 510 U.S. 1141, 127 L. Ed. 2d 435 (1994). This Court has specifically rejected this argument as without merit. *E.g.*, *Norwood*, 344 N.C. at 530, 476 S.E.2d at 357; *State v. Powell*, 340 N.C. 674, 695, 459 S.E.2d 219, 230 (1995), *cert. denied*, 516 U.S. 1060, 133 L. Ed. 2d 688 (1996). Having fully considered defendant's arguments on this issue, we decline to change our position.

## PRESERVATION ISSUES

Defendant makes five additional arguments which he concedes this Court has previously found to be without merit in other cases. Defendant makes these arguments for the purpose of permitting this Court to reexamine its prior holdings and also for the purpose of preserving them for any possible further judicial review of this case. Specifically, defendant argues that: (1) the trial court erred by instructing the jury using pattern instructions for capital sentencing; (2) the trial court erred by instructing the jury that if it answered "Yes" to sentencing Issue Four on the verdict form used in capital sentencing proceedings, it would be the jury's duty to recommend a sentence of death; (3) the trial court erred in denying defendant's motions to increase the number of peremptory challenges prior to jury selection; (4) the trial court erred when submitting aggravating circumstances by refusing to give defendant's requested instructions on aggravating circumstances, and by imposing sentences in the felonies used as aggravators; and (5) the trial court erred in denying defendant's motions for a bill of particulars regarding what the aggravating circumstances would be and denying defendant's motion to reveal the evidence of the aggravating circumstances. We have carefully considered defendant's arguments on these issues and find no compelling reason to depart from our prior holdings.

## PROPORTIONALITY REVIEW

Having concluded that defendant's trial and capital sentencing proceeding were free of prejudicial error, it is our duty to ascertain: (1) whether the evidence supports the jury's findings of the aggravating circumstances on which the sentence of death was based; (2) whether the sentence of death was entered under the influence of passion, prejudice, or any other arbitrary consideration; and (3) whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the

defendant. N.C.G.S. § 15A-2000(d)(2). After thoroughly examining the record, transcripts, and briefs in the present case, we conclude that the record fully supports the aggravating circumstances found by the jury. We also find no indication that the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary consideration. We turn then to our final statutory duty of proportionality review.

[25] In the present case, defendant pled guilty to first-degree murder based on the theory of premeditation and deliberation and under the felony murder rule. Defendant also pled guilty to first-degree rape, assault with a deadly weapon inflicting serious injury, misdemeanor assault on a female, and two counts of first-degree burglary. The jury found as aggravating circumstances: (1) that the murder was committed by defendant while he was engaged in committing first-degree burglary, N.C.G.S. § 15A-2000(e)(5); (2) that the murder was committed by defendant while he was engaged in committing first-degree rape, N.C.G.S. § 15A-2000(e)(5); and (3) that the murder was part of a course of conduct in which defendant engaged and which included the commission by defendant of other crimes of violence against another person or persons, N.C.G.S. § 15A-2000(e)(11).

Of the fourteen mitigating circumstances submitted, one or more jurors found the following non-statutory mitigators: (1) at the time defendant committed the crime, he was under the influence of crack cocaine and/or alcohol; and (2) under oath, defendant expressed remorse for his actions and apologized to the victim's family.

In conducting our proportionality review, it is proper to compare the present case with other cases in which this Court has concluded that the death penalty was disproportionate. *McCollum*, 334 N.C. at 240, 433 S.E.2d at 162. We have found the death penalty disproportionate in seven cases. *State v. Benson*, 323 N.C. 318, 372 S.E.2d 517 (1988); *State v. Stokes*, 319 N.C. 1, 352 S.E.2d 653 (1987); *State v. Rogers*, 316 N.C. 203, 341 S.E.2d 713 (1986), *overruled on other grounds by State v. Gaines*, 345 N.C. 647, 483 S.E.2d 396, *cert. denied,* —— U.S. ——, 139 L. Ed. 2d 177 (1997), *and by State v. Vandiver*, 321 N.C. 570, 364 S.E.2d 373 (1988); *State v. Young*, 312 N.C. 669, 325 S.E.2d 181 (1985); *State v. Hill*, 311 N.C. 465, 319 S.E.2d 163 (1984); *State v. Bondurant*, 309 N.C. 674, 309 S.E.2d 170 (1983); *State v. Jackson*, 309 N.C. 26, 305 S.E.2d 703 (1983). We conclude that this case is not substantially similar to any case in which this Court has found the death penalty disproportionate.

This case has several distinguishing features which we find significant in determining defendant's death sentence to be proportionate. First, defendant pled guilty to first degree murder under the theory of premeditation and deliberation as well as the felony murder rule. We have previously noted that a conviction upon both theories of premeditation and deliberation and felony murder is significant in finding a death sentence proportionate. *State v. Harris*, 338 N.C. 129, 161, 449 S.E.2d 371, 387 (1994), *cert. denied*, 514 U.S. 1100, 131 L. Ed. 2d 752 (1995). Second, evidence tended to show that defendant brutally assaulted the victim in her own bedroom in the early morning hours. "A murder in the home 'shocks the conscience, not only because a life was senselessly taken, but because it was taken [at] an especially private place, one [where] a person has a right to feel secure.' " *State v. Adams*, 347 N.C. 48, 77, 490 S.E.2d 220, 236 (1997) (quoting *Brown*, 320 N.C. at 231, 358 S.E.2d at 34), *cert. denied*, —— U.S. ——, 139 L. Ed. 2d 878 (1998). Further, the evidence tended to show that defendant repeatedly and brutally beat and raped the victim during an attempt to steal money to enable him to buy more crack cocaine. The victim was an eighty-three-year-old woman who was no match for defendant, a twenty-nine-year-old man. These features distinguish this case from those in which we have held the death penalty disproportionate.

We also compare this case with the cases in which we have found the death penalty to be proportionate. Although we review all of the cases in the pool of "similar cases" when engaging in our statutorily mandated duty of proportionality review, we reemphasize here, that we will not undertake to discuss or cite all of those cases each time we carry out that duty. *State v. Williams*, 308 N.C. 47, 81, 301 S.E.2d 335, 356, *cert. denied*, 464 U.S. 865, 78 L. Ed. 2d 177 (1983). It suffices to say that the present case is more similar to cases in which we have found the sentence of death proportionate than to those in which we have found it disproportionate.

After comparing this case to "similar cases" as to the crime and the defendant, we conclude that this case has the characteristics of first-degree murders in which we have previously held the death penalty proportionate. For the foregoing reasons, we conclude that the death sentence entered in the present case is not disproportionate. The judgments and sentences entered by the trial court, including the sentence of death for first-degree murder, were without error and must be left undisturbed.

FRYE REG'L MED. CTR. v. HUNT

[350 N.C. 39 (1999)]

NO ERROR.

Justices MARTIN and WAINWRIGHT did not participate in the consideration or decision of this case.